**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 7 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BIGLER JOBE STOUFFER, II,

  Petitioner-Appellee,

v.

DAN REYNOLDS,

  Respondent-Appellant.

No. 99-6327

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-95-401-C)**

---

Robert L. Whittaker, Assistant Attorney General (W. A. Drew Edmondson, Attorney General, with him on the brief), Oklahoma City, Oklahoma, for Respondent-Appellant.

Robert R. Nigh, Jr. Tulsa, Oklahoma, for Petitioner-Appellee.

---

Before **EBEL**, **PORFILIO,** and **KELLY**, Circuit Judges.

---

**PORFILIO**, Senior Circuit Judge.

---

This case is before us for a second time. On the first occasion, we vacated the order of the district court denying habeas corpus on certain Sixth Amendment claims and remanded the case for further hearing. *Stouffer v. Reynolds*, 168 F.3d 1155 (10th Cir. 1999). On remand, the district court entered a memorandum opinion and order based upon supplemental authorities and factual stipulations filed in writing by the parties. The court concluded Petitioner Stouffer was denied effective assistance of counsel at both the trial on the merits as well as the subsequent penalty phase and granted a writ of habeas corpus conditioned upon a grant of new trial in state court within 120 days. The Appellant (Respondent or State) now appeals contending Mr. Stouffer has failed to show prejudice as required by *Strickland v. Washington*, 466 U.S. 668 (1984); therefore, the district court erred in its judgment. We believe the district court clearly and properly concluded Mr. Stouffer was prejudiced by the unexplained and unsupportable ineptness of trial counsel; therefore, we affirm.[1]

On appeal, the State makes a rather remarkable two-stage argument. Having entered into detailed stipulations of fact in the district court, it nonetheless contends the court erred in considering the facts agreed upon in the stipulations because they constituted "new evidence" that had not been raised in the state court. Thus, the State

---

[1]Reiteration of the facts underlying the state court conviction would be redundant at this point because they have been amply set forth in our prior opinion. Those facts necessary to a full explanation of our holding will be presented when appropriate, however.

argues, the district court violated the exhaustion rule of 28 U.S.C. § 2254(b). The State then maintains if we conclude the evidence was not subject to exhaustion, those facts fail nonetheless to support Petitioner's burden of showing prejudice as required by *Strickland.* We see no merit in either argument.

At best, the State's exhaustion argument is merely formalistic. We find it sophistic for the State to maintain the district court should have disregarded facts which, by stipulating, the Respondent clearly and unequivocally admitted were true, particularly when those facts were central to the issue before the district court. As we shall later discuss, the facts contained in the stipulation are a road map leading to the inescapable conclusion Petitioner's trial counsel inexplicably failed to provide a constitutionally adequate defense.

The State now argues it objected to the admission of the stipulated facts when, in the pre-trial order it joined, the State asserted: "any new evidence which is presented in the evidentiary hearing is subject to the exhaustion rules of 28 U.S.C. § 2254." That generalized legal argument notwithstanding, it is inescapable the State entered willingly and without objection into the stipulations of fact. Indeed, during oral argument in this court, counsel for the State admitted he was neither coerced into stipulating nor did he ask the district court for an evidentiary hearing during which the stipulated facts could be further considered. Consequently, had there been an exhaustion requirement, we believe the State waived it by stipulating without objection.

When considered in the light of the rest of the record, the State's argument rings even more hollow. Petitioner asked the district court to hold the remanded proceeding in abeyance while he attempted to present this "new evidence" to the state court. Yet, in reliance upon an order of the Oklahoma Court of Criminal Appeals directing its clerk "not to accept any more filings from [Mr. Stouffer]," the district court denied abeyance on the ground that "additional filings in state court on petitioner's behalf will be futile." When this finding is coupled with the other evidence in the record showing Mr. Stouffer's vain attempts to obtain an evidentiary hearing[2] on the subject of the adequacy of his trial counsel during state post-conviction proceedings, we see no error in the district court's consideration of the stipulated facts.[3]

The State next argues Petitioner failed to carry his burden of proving he was prejudiced by the failures of his trial counsel. It contends that burden exceeds merely showing trial counsel's shortcomings had "some conceivable effect on the outcome," and requires evidence that but for those shortcomings the outcome would have been different. Arguing this judgment must be made in the context of all the evidence presented, the State maintains the evidence of Mr. Stouffer's guilt was great; thus, the possibility of defense counsel's constitutional inadequacy is minimal.

---

[2]The fact that no opportunity was given Petitioner to present his evidentiary facts in state court distinguishes this case from **Demarest v. Price**, 130 F.3d 922 (10th Cir. 1997), cited and relied upon by the State.

[3]**Williams v. Taylor**, 120 S. Ct. 1479 (2000).

Against that backdrop, the district court found a plethora of facts which emanated from the stipulations and the record, all of which demonstrate the effect of trial counsel's inadequacies was substantial.

First, during the guilt phase, defense counsel made these omissions or errors:

1.      He never made an opening statement. He initially reserved a statement later in an affidavit claiming this was to "maintain the secrecy of the defense theory to prohibit the State from countering the theory during [its] case." Nonetheless, he did not take the opportunity to explain that theory by exercising his reserved option and making a statement at the opening of the defense case.

2.      Defense counsel failed to lay proper grounds for admission into evidence a certified copy of an exhibit impeaching a key prosecution witness. The district court noted this ineptitude was exacerbated by counsel's failure to lay a proper foundation for introduction of additional impeaching evidence.

3.      Defense counsel "exhibited ineptness at direct questioning without use of leading questions," later asking the state court "how to phrase a question in a non-leading manner."

4.      Both defense counsel were unable to conduct effective cross-examination of the State's witnesses. ( Indeed, we have already noted their approach to cross-examination not only failed to point out inconsistencies in the testimony of prosecution witnesses, but several times served to bring out even greater detail and emphasize incriminating evidence. **Stouffer**, 168 F.3d at 1164-65.)

5.      "Both defense counsel presented closing arguments which were ineffective at proffering any semblance of a defense theory." (We have already noted these arguments were "irrelevant historical narrative" which added nothing to the defense. **Id.** at 1165.)

6.      Mr. James, who was asked to "second chair" one week before the state trial, "conducted no pretrial preparation" for the purpose of examining witnesses, nor did he "speak with petitioner at any time concerning petitioner's version of events." Notwithstanding this lack of preparation, Mr. James conducted

- 5 -

the cross-examination of "four of the State's key forensic experts." Mr. James made no attempt to interview these witnesses before trial and prepared for cross-examination only by reading their reports "during trial."

7. Mr. Cantrell, Petitioner's chief State trial counsel, failed to file an application for funds to hire experts to examine the opinions of the State's expert witnesses. The district court found the result was an inability to "develop the defense theory through cross-examination of the State's witnesses [which] was not strategic, but [a] total lack of preparation."

8. Although a defense investigator viewed the crime scene "and discovered numerous [factual] inconsistencies with the State's theory of the case, he was not called to testify" by defense counsel. These findings were "crucial" and included such facts as "thirteen shots were fired in the house, rather than five as alleged by the State." This fact goes directly to the defense theory Mr. Stouffer was not the murderer. Moreover, the investigator was not called to testify about other facts he had uncovered because defense counsel thought the investigator was needed in the courtroom and had he testified he would have been excluded by the court's sequestration order.

9. No evidence was elicited during defense cross-examination to bring out the discrepancy between the number of shots the State claimed were fired and the thirteen shots claimed by the defense investigator to have been fired.

Looking at these facts in light of the entire record, the district court concluded "such a total lack of preparedness and ability equate [sic] to constitutionally deficient performance from any vantage point." On appeal, the State's only response is to "dispute[] that there was a complete lack of skill in presenting the defense theory." To the contrary, we think these undisputed facts speak for themselves.

The State's argument, both in briefs and in court, has consisted of chiefly showing that if counsel had performed as Mr. Stouffer now contends was required, there would

have simply been a conflict in the evidence, which the jury still would have resolved in the State's behalf.  That position begs the issue.

The question is not whether counsel's ineffectiveness must be demonstrated by showing the trial would have resulted in a defense verdict, but whether the omitted evidence "creates a reasonable doubt that did not otherwise exist."  ***See United States v. Agurs***, 427 U.S. 97, 112 (1976).  Upon such a showing, constitutional error has been committed.  ***Id.***[4]  In this case, it cannot be fairly said that the omissions and failures of trial counsel, while argumentatively explainable, do not raise a reasonable doubt in the guilty verdict.  It is conceivable that had counsel performed those duties they failed to do, had they been able to lay proper foundations for the introduction of relevant evidence, had they taken the time to prepare for and challenge the State's evidence, had they taken the opportunity to set forth for the jury the defendant's theory of the case, and had they introduced the contradictory evidence found by the defense investigator, reasonable doubt would have been created in the minds of the jury.  Because none of these things were done, Mr. Stouffer was deprived of his Sixth Amendment right to effective counsel.

---

[4]Although ***United States v. Agurs***, 427 U.S. 97 (1976), deals with the prosecution's failure to disclose evidence, the State admits this is the standard we must apply here.  We agree that in this case the issue revolves about evidence available to but not considered by the jury.   In a constitutional context, we see no principled distinction between whether that omission results from the acts of the prosecution or an ill-prepared defense counsel.  ***See also Banks v. Reynolds***, 54 F.3d 1508, 1518 (10th Cir. 1995) ("[W]e review the cumulative impact of the withheld evidence; its utility to the defense as well as its potentially damaging impact on the prosecution's case.").

It is therefore clear his conviction is unsupportable under the Constitution of the United States. He has maintained, and the district court also has found, the defaults of counsel were perpetuated during the penalty phase of the State proceedings and resulted in a constitutionally unsupportable verdict of death. The district court carefully and thoughtfully weighed each of the Petitioner's claims, the stipulations of fact, and the record, concluding the deficiencies in the representation of counsel "clearly prejudiced petitioner by denying any reasonable prospect for avoiding the death penalty." The court further determined those deficiencies created "a serious doubt of the reliability of the result of the second stage of the trial" undermining any confidence in the verdict and sentence. We need not reach that point, however, because of our holding on the guilt phase of the trial.

The judgment of the district court is **AFFIRMED**, and the case is **REMANDED** with instructions to re-enter the order granting the writ of habeas corpus subject to the commencement of a new trial of the Petitioner within a period to be determined reasonable under the circumstances by the district court.