**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DARRELL LYNN THOMAS,

        Petitioner-Appellant,

v.

No. 99-5030

GARY GIBSON, Warden, Oklahoma
State Penitentiary,

        Respondent-Appellee.

---

Appeal from the United States District Court
for the N. District of Oklahoma
(D.C. No. CV-96-494-K)

---

Vicki Ruth Adams Werneke, Assistant Federal Public Defender, Death Penalty
Federal Habeas Corpus Division, Oklahoma City, Oklahoma, for Appellant.

Robert L. Whittaker, Assistant Attorney General, Criminal Division, Oklahoma
City, Oklahoma, (W. A. Drew Edmondson, Attorney General of Oklahoma, with
him on the brief), for Appellee.

---

Before **TACHA, BRORBY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

# I. INTRODUCTION

An Oklahoma state jury found Darrell Thomas guilty of first degree murder and robbery by force. The jury sentenced Thomas to death for the murder and to a term of ten years in prison for the robbery. Thomas unsuccessfully challenged his convictions and death sentence on direct appeal and state collateral review. *See Thomas v. State*, 811 P.2d 1337 (Okla. Crim. App. 1991) ("*Thomas I*"); *Thomas v. State*, 888 P.2d 522 (Okla. Crim. App. 1994) ("*Thomas II*"). Thomas thereafter filed the instant 28 U.S.C. § 2254 habeas corpus petition in federal district court attacking the constitutionality of his convictions and death sentence. The district court denied the petition *in toto*.

On appeal, Thomas raises three challenges each to the validity of his convictions and the validity of his death sentence. As to the validity of his underlying convictions, Thomas argues as follows: (1) his trial counsel provided constitutionally ineffective assistance by failing to investigate evidence supporting Thomas' innocence and, in particular, evidence supporting the likely guilt of the victim's husband; (2) the prosecutor deprived Thomas of his right to due process by failing to endorse three witnesses in a timely manner; and (3) the introduction of inadmissible hearsay rendered his trial fundamentally unfair. After a thorough review of Thomas' contentions, this court concludes that his claims of error regarding the guilt phase of his trial are either procedurally barred

or without merit. Accordingly, we affirm the district court's denial of relief as to these three issues.

In addition to his challenges to the validity of the underlying convictions, Thomas also asserts that his death sentence is unconstitutional. In particular, Thomas asserts: (1) the sole aggravating circumstance found by the jury–that the murder was especially heinous, atrocious, and cruel–is not supported by sufficient evidence; (2) the verdict form used during the guilt phase directed a verdict of death, thereby depriving Thomas of a fair and individualized sentencing determination; and (3) the state trial court deprived Thomas of a fundamentally fair sentencing proceeding when it precluded Thomas from presenting to the jury evidence that the prosecutor had offered Thomas a life sentence in exchange for a guilty plea. Upon review of the record in this case, we conclude that no reasonable fact finder could conclude that the murder in this case was heinous, atrocious, or cruel, as that term is defined by Oklahoma law. This court further concludes, therefore, that the decision of the Oklahoma Court of Criminal Appeals holding that there was sufficient evidence to support the aggravator is unreasonable. *See* 28 U.S.C. § 2254(d), (e). In light of that conclusion, this court need not address Thomas' remaining contentions of error regarding the validity of his death sentence.

This court exercises jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c), **affirms** the denial of habeas relief as to those issues relating to the guilt phase of Thomas' trial, **reverse**s the denial of habeas relief as to Thomas' sentence of death, and **remand**s to the district court to grant the writ consistent with this opinion.

## II. BACKGROUND

On April 28, 1987, Darrell Kinnich discovered the body of Glenda Jane Powell in her home. Kinnich, who lived in a trailer two hundred feet from Powell's home, was the stepfather of Powell's estranged husband, Kenneth Powell. Powell had been severely beaten. She was laying on her back, with her legs bent underneath her, on the living room floor. The medical examiner concluded the cause of death was multiple blunt force, including manual strangulation, and shock force injuries. There were four stab wounds, two of which were inflicted after death. The time of death was estimated at no later than 5:00 a.m. on the morning the body was found, and as early as the last time Powell was seen alive, at 7:00 p.m. on April 27th.

An investigation by the authorities in Creek County, Oklahoma, revealed the following, all of which was presented at Thomas's trial. On April 27th, Powell went to the VFW bar in or around Sapulpa, Oklahoma, sometime between

4:30 and 5:00 p.m.  After consuming two drinks, Powell called Kenneth Powell and asked him for money to make her car payment.  Powell told the bartender at the VFW she would be back; she left the bar and went to Kenneth Powell's house.  Kenneth Powell gave her three $100 bills and a $20 bill so she could make her car payment.

Shortly after 6:00 p.m., Powell returned to the bar.  While she consumed two more drinks, Powell sat at the bar talking to two men, Kenneth Worrall and Thomas.  After Powell told Worrall and Thomas she was building a new home, Thomas asked if Powell's new home had been treated for termites, indicated that he worked for a pest-control company, and offered to give her an estimate.   After negotiating a price for termite control treatment and a discussion of directions to Powell's home, Powell and Thomas left the bar together.

Kinnich testified he saw Powell arrive home in her pickup at "6:30 [p.m.] or later"; a gold-colored car with no hubcaps on the driver's side arrived at approximately the same time.  A white male exited the gold-colored car, walked around Powell's house, and then entered the house with Powell.  Kinnich testified the man was wearing a dress shirt with the sleeves cut off at the shoulder seam.  Carolyn Barnes, a waitress and bartender at the VFW bar, testified that Thomas was wearing such a shirt the night of the murder and that Powell left the bar with Thomas.  Kinnich testified he observed the man leave Powell's house

approximately thirty minutes later carrying a small, white object. Powell's small, envelope-shaped, white purse was found to be missing after the murder.

The next day, Thomas went to the Mustang Lounge in Tulsa, Oklahoma. Thomas approached the owner of the bar and the owner's daughter and asked if they would like to purchase some jewelry. The owner eventually allowed Thomas to pawn the jewelry for $80.00. At trial, Thomas' counsel stipulated that the jewelry belonged to Powell. Thomas also showed the owner's daughter several one hundred dollar bills that he had in his wallet. As noted above, Powell had received three one hundred dollar bills from her estranged husband Kenneth Powell on the night of the murder.

Thomas was eventually apprehended by the authorities at the Coppa Motel in Durant, Oklahoma. At the time of his arrest, officers seized Thomas' car; the car matched the description given by Kinnich and the patterns in the tire treads matched the tracks found at the scene of the crime. At a lineup conducted on May 28, 1987, Kinnich picked Thomas out of a group of five but indicated that he was "not sure" Thomas was the person he saw at Powell's house the night of the murder. Kinnich expressed a similar hesitancy when he testified at the preliminary hearing. Nevertheless, at trial, Kinnich testified he was "pretty sure" the man he saw walking around Powell's house was Thomas. Kinnich explained

he was more certain of his identification because he had "seen [Thomas] more times" since the night of the murder.

Thomas' strategy at trial was to cast doubt on the prosecution case by adducing evidence that police investigators suspected that others, either in addition to or apart from Thomas, were involved in the murder of Powell. In fact, Thomas adduced testimony that officers suspected he had conspired with Kenneth Powell or, more specifically, that Kenneth Powell had hired him to kill Powell. Thomas also adduced testimony that Powell feared for her life months before the murder and had indicated that some unidentified individual or group was going to kill her.

After hearing two days of evidence, a jury found Thomas guilty of first degree murder and robbery by force. The sentencing stage for the murder conviction commenced immediately after the conclusion of the guilt phase of the trial. No additional evidence was presented by either the prosecutor or Thomas' trial counsel. Instead, the prosecution incorporated the evidence it adduced during the guilt phase of the trial in support of the "heinous, atrocious, or cruel" aggravating circumstance, the only aggravating circumstance advanced by the prosecution. The jury returned a sentence of death that same evening.

Thomas appealed his conviction and death sentence to the Oklahoma Court of Criminal Appeals ("OCCA"), raising numerous claims of error as to both the

guilt and penalty phases of his trial. The OCCA affirmed Thomas' conviction and death sentence in 1991. *See Thomas I*, 811 P.2d at 1352. The OCCA affirmed the denial of Thomas' state petition for post-conviction relief in 1994. *See Thomas II*, 888 P.2d at 527-28. Thomas filed the instant § 2254 petition in federal district court on June 3, 1996. The district court entered an order denying Thomas' petition in December of 1998 and entered an order granting Thomas a certificate of appealability ("COA") as to all issues raised in the petition. *See* 28 U.S.C. § 2253(c)(1) (providing that no appeal can be taken from the denial of relief "in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a COA).[1] This appeal followed.

---

[1]This court has previously noted that "blanket" COAs, like the one entered by the district court in this case, are at odds with the statutory provision governing appeals in § 2254 petitions. *See LaFevers v. Gibson*, 182 F.3d 705, 710 (10th Cir. 1999) ("In each instance, the district court must analyze a capital case as it would any other section 2254 petition . . . rendering judgment as Congress has prescribed."); *see also* 28 U.S.C. § 2253(c)(2) (providing that a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right"); *id.* § 2253(c)(3) (providing that any COA "shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]"). Nevertheless, in light of the district court's blanket COA, this court must review the merits of each claim raised on appeal. *See LaFevers*, 182 F.3d at 711.

## III. ANALYSIS

**A. Standard of Review**

Because Thomas filed his § 2254 habeas petition on June 3, 1996, after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[2] our review of Thomas' habeas petition is governed by the revised standards of review set out in 28 U.S.C. § 2254(d) and (e). *See Moore v. Gibson*, 195 F.3d 1152, 1160-61 (10th Cir. 1999), *cert. denied*, No. 99-8812, 2000 WL 343946 (U.S. May 30, 2000).[3] The pertinent subdivisions of § 2254 provide as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2]Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[3]Thomas asserts in passing that the applicability of the AEDPA should be governed by the date he filed his request for appointment of counsel pursuant to 21 U.S.C. § 848(q)(4)(B) rather than the date he actually filed his § 2254 habeas petition. As Thomas recognizes, however, this court has squarely rejected that proposition. *See Moore v. Gibson*, 195 F.3d 1152, 1160-63 (10th Cir. 1999), *cert. denied*, No. 99-8812, 2000 WL 343946 (U.S. May 30, 2000).

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

The Supreme Court recently elucidated the opaque language of § 2254(d)(1) in *Williams v. Taylor*, 120 S. Ct. 1495, 1518-23 (2000) (opinion of O'Connor, J.). Speaking for a majority of the Court in her separate concurring opinion, Justice O'Connor noted the AEDPA allows a federal court to grant habeas relief under § 2254(d)(1) only if the relevant state-court decision was either "contrary to" or "an unreasonable application of" established Supreme Court precedent. *See id.* at 1519. As for § 2254(d)(1)'s "contrary to" clause, Justice O'Connor noted that a state-court decision would be contrary to the Court's clearly established precedent in two circumstances: (1) "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Id.* at 1519, 1519-20. Under the "unreasonable application" clause, on the other hand, a federal habeas court may grant the writ only if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to

the facts of the prisoner's case." *Id.* at 1523.  To be clear, "[u]nder §

2254(d)(1)'s 'unreasonable application' clause . . . , a federal habeas court may

not issue the writ simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable."

*Id.* at 1522.

To the extent that the state court has not addressed the merits of a claim

and "the federal district court made its own determination in the first instance,"

this court reviews "the district court's conclusions of law de novo and its findings

of fact, if any, for clear error."  *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir.

1999).

## B.  Habeas Claims Relating to the Guilt Phase

### 1.  *Ineffective Assistance of Trial Counsel*

Thomas asserts that his trial counsel was ineffective in failing to adequately

investigate the crime and prepare for trial.  In particular, Thomas asserts that trial

counsel failed to adequately investigate and present evidence that Kenneth Powell

was the actual murderer.[4]  The district court concluded that this claim was

---

[4]Before the district court, Thomas asserted several additional claims of
ineffective assistance of trial counsel.  His brief on appeal, however, can only be
fairly read as raising the single ineffective assistance claim set out above.  To the
extent that Thomas' appellate brief can possibly be read as mentioning in passing
(continued...)

procedurally barred because Thomas failed to raise it on direct appeal. Although this court agrees that the claim is procedurally barred, we base our decision on Thomas' failure to adequately present the basis of this claim to the Oklahoma courts in his state petition for post-conviction relief, a distinct procedural bar question fully briefed by both parties on appeal. *See United States v. Sandia*, 188 F.3d 1215, 1217 (10th Cir. 1999) (holding that this court is "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court" (quotation omitted)); *see also English v. Cody*, 146 F.3d 1257, 1263-65 (10th Cir. 1998) (discussing intricacies inherent in determination of whether Oklahoma procedural bar on ineffective assistance of trial counsel claims not raised on direct appeal is "adequate" to bar federal habeas corpus review).

Thomas did not raise any claims of ineffective assistance of trial counsel on direct appeal. *See Thomas II*, 888 P.2d at 525. He did, however, raise several claims of ineffective assistance of trial counsel in his state petition for post-conviction relief, including a generalized claim that his trial counsel had not adequately prepared for trial. As grounds for his contention that his trial counsel

___

[4](...continued)
the additional ineffective assistance claims asserted before the district court, those claims are so inadequately developed on appeal as to be deemed waived. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1128 n.6 (10th Cir.), *cert. denied*, 120 S. Ct. 398 (1999).

had not adequately investigated the crime and prepared for trial, Thomas asserted in completely cursory fashion as follows: (1) counsel's time records revealed that he had only spent ten hours of out-of-court time preparing for the capital murder trial; (2) counsel failed to insist on a continuance after being surprised by the belated endorsement of three prosecution witnesses; (3) counsel did not request a cautionary instruction or request a mistrial after a state witness blurted out hearsay on direct examination; (4) counsel did not make a proffer as to questions he would have asked certain members of the venire who had been removed from the panel after expressing reservations about the death penalty; and (5) counsel did not object to certain second stage jury instructions. In addition to these five cursory claims of ineffective assistance, Thomas devoted a substantial amount of analysis to the assertion that trial counsel had completely failed to develop and present mitigation evidence during the penalty phase of the trial. Notably, however, at no point in his state post-conviction petition did Thomas argue his trial counsel was ineffective for failing to develop evidence that Kenneth Powell was the likely murderer or in failing to present that evidence to the jury at trial.[5]

Because Thomas has never presented to the OCCA the question of his trial counsel's performance with regard to investigating and presenting evidence that

---

[5]As noted above, Thomas' trial counsel did adduce evidence that law enforcement officials suspected Kenneth Powell was involved in the murder and that Powell was frightened for her safety well before the murder took place.

Kenneth Powell was the actual murderer, that claim is technically unexhausted.

*See Jones v. Gibson*, 206 F.3d 946, 955 (10th Cir. 2000); *Medlock v. Ward*, 200

F.3d 1314, 1322 (10th Cir. 2000); *Smallwood v. Gibson*, 191 F.3d 1257, 1266-67

(10th Cir. 1999).[6]  Nevertheless, the Supreme Court has held that if a petitioner

"failed to exhaust state remedies and the court to which the petitioner would be

required to present his claims in order to meet the exhaustion requirement would

now find the claims procedurally barred" the claims are considered exhausted and

procedurally defaulted for purposes of federal habeas relief.  *Coleman v.*

*Thompson*, 501 U.S. 722, 735 n.1 (1991); *see also Medlock*, 200 F.3d at 1322-23.

"Oklahoma deems waived claims that were not raised in an initial application for

---

[6]To the extent that Thomas' appellate brief could be read as asserting that his generalized claim of ineffective assistance of trial counsel is sufficient to exhaust the specific issue presented to this court on appeal, his argument is clearly foreclosed by Tenth Circuit precedent.  In *Demarest v. Price*, this court held as follows:

> The exhaustion doctrine requires a state prisoner to fairly present his or her claims to the state courts before a federal court will examine them.  Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there. The prisoner's allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.  Therefore, although a habeas petitioner will be allowed to present bits of evidence to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must first be presented to the state courts.

130 F.3d 922, 932 (10th Cir. 1997) (citations and quotations omitted).

post-conviction relief in a death penalty case." *Medlock*, 200 F.3d at 1323 (citing Okla. Stat. tit. 22, §§ 1086, 1089(D)(2)). Accordingly, Thomas has defaulted this ineffective assistance claim by failing to raise it in state court.

This court may not consider issues raised in a habeas petition "that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *English*, 146 F.3d at 1259. This court has held that Oklahoma's procedural bar to claims not raised on initial post-conviction review, including claims of ineffective assistance of counsel, is independent and adequate. *See Medlock*, 200 F.3d at 1323; *Moore v. Reynolds*, 153 F.3d 1086, 1097 (10th Cir. 1998), *cert. denied*, 526 U.S. 1025 (1999). Because Thomas does not argue that the failure to reach the merits of this claim would result in a fundamental miscarriage of justice, review of his ineffective assistance claim is procedurally barred unless Thomas can demonstrate cause and prejudice.

As cause for his failure to fairly present this issue to the state courts, Thomas asserts that he was denied the effective assistance of counsel in his state post-conviction proceedings. This argument fails on the basis of well-established Supreme Court precedent: "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*,

501 U.S. at 752 (citations omitted); *see also Beavers v. Saffle*, No. 99-6154, 2000 WL 775582, at *__ (10th Cir. June 16, 2000) ("The right to challenge a sentence in a post-conviction application is not constitutionally based."); 28 U.S.C. § 2254(i) (providing that ineffective assistance of counsel during federal or state collateral post-conviction proceedings "shall not" be grounds for federal habeas relief).

Recognizing the force of this rule, Thomas nevertheless asserts that it does not apply in his case because Oklahoma law provides for the appointment of counsel in post-conviction proceedings in capital cases. *See* Okla. Stat. tit. 22, §§ 1355.6(B), 1356, 1360. The problem with this argument is that § 2254 exists to correct violations of the United States Constitution, not errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Beavers*, 2000 WL 775582, at *__ (holding that because state post-conviction processes are not constitutionally based, petitioner could not overcome procedural bar by asserting that OCCA had misled him regarding the proper procedures for filing a state petition for post-conviction relief). Thomas' assertion of ineffective assistance of state post-conviction counsel is insufficient to overcome the procedural bar in this case.[7] *See Coleman*, 501 U.S. at 755 ("We reiterate that counsel's ineffectiveness

---

[7]Although this court's conclusion that Thomas has not demonstrated cause for his procedural default obviates the need to address the question of prejudice,
(continued...)

will constitute cause only if it is an independent constitutional violation.").

Accordingly, the district court did not err in refusing to address the merits of Thomas' ineffective assistance of trial counsel claim.

### 2.       *Delayed Endorsement of Prosecution Witnesses*

Thomas asserts that the prosecution failed to endorse three trial witnesses in a timely fashion in violation of a conglomeration of Oklahoma statutory and constitutional provisions.[8]  Thomas further asserts that these provisions create a

---

[7](...continued)
we note that an exacting review of the entire record in this case leads to the inexorable conclusion that Thomas cannot demonstrate "actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Without going into unnecessary detail, a consideration of all of the evidence contained in Thomas' habeas petition and later-filed application to expand the record leads this court to conclude that none of that evidence, considered either singly or cumulatively, "'creates a reasonable doubt that did not otherwise exist.'" *See Stouffer v. Reynolds*, No. 99-6327, 2000 WL 728826, at *3 (10th Cir. June 7, 2000) (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)).  In particular, we note that at trial, Thomas himself elicited testimony: (1) that police investigators considered Kenneth Powell a suspect in the murder of his wife; (2) investigators had information that Kenneth Powell had been seen with Thomas; and (3) Powell had expressed fear she would be murdered well before the murder took place.  Furthermore, the jury saw portions of a videotape of Thomas' statement to police wherein officers tried to get Thomas to admit that Kenneth Powell had hired him to kill Powell.  Against this evidentiary backdrop, this court simply notes that while some of the evidence cited by Thomas in support of this claim could possibly tend to inculpate Kenneth Powell, the evidence is simply not exculpatory as to Thomas.  Because the evidence advanced by Thomas does not create reasonable doubt where none otherwise existed at trial, Thomas cannot show prejudice flowing from the alleged constitutional violation.

[8]*See* Okla Const. art. II, § 20 ("[I]n capital cases, at least two days before the case is called for trial, [the accused] shall be furnished with a list of the
(continued...)

-17-

liberty interest protected by the Due Process Clause. Thus, according to Thomas, the state trial court denied him due process of law when it allowed the witnesses to testify at trial despite the prosecutor's failure to timely endorse them. In rejecting this claim of error on direct appeal, the OCCA held that Thomas had waived the issue of the late endorsement when he failed to "withdraw his announcement that he is ready for trial and request an immediate continuance." *Thomas I*, 811 P.2d at 1341.

In resolving Thomas' § 2254 habeas petition, the federal district court implicitly assumed that this claim implicated a violation of the United States Constitution rather than a simple violation of state law not amenable to federal habeas review. *Compare Estelle*, 502 U.S. at 67 (holding that "federal habeas corpus relief does not lie for errors of state law" (quotation omitted)) *with Clemons v. Mississippi*, 494 U.S. 738, 746 (1990) (recognizing that in certain circumstances state procedural laws may create liberty interests that cannot be denied without offending due process principles). The district court concluded

---

[8](...continued)
witnesses that will be called in chief . . . ."); Okla Stat. tit 22, § 303 (obligating the prosecutor to endorse, on a copy of the Information, the names and addresses of the witnesses the state intends to call at trial and providing that the prosecution may endorse additional witnesses who become known after the filing of the Information upon application to the trial court); *id.* tit. 21, § 701.10(c) (mandating that "[o]nly such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible" in the sentencing proceeding).

that Thomas' claim nevertheless failed because (1) Thomas had waived the cited provisions by failing to request a continuance and (2) the OCCA had consistently applied its waiver rule. *See* Dist. Ct. Order at 48-50.

The parties on appeal vigorously contest whether the provisions of Oklahoma law identified by Thomas create a procedural right entitled to protection under the Due Process Clause. This court concludes, like the district court, that it is unnecessary to resolve this question because Thomas' claim fails even if the Due Process Clause is implicated. First, even assuming the cited provisions give rise to some type of constitutionally-protected liberty interest, Oklahoma law makes clear that the liberty interest is far more modest than Thomas would have it. In particular, Thomas asserts that he was entitled to strike the belatedly-endorsed witnesses and bar their testimony at trial. Thomas has not cited, however, and this court has not found, any authority for the proposition that such a remedy is available when a prosecutor violates the notice/endorsement provisions relied upon by Thomas. Instead, Oklahoma law is clear and consistent: when a defendant is unfairly surprised by a belated endorsement of prosecution witnesses, the defendant is entitled to a continuance to adequately prepare for trial in light of the newly-revealed evidence. *See Thomas I*, 811 P.2d at 1341; *Diaz v. State*, 728 P.2d 503, 513 (Okla. Crim. App. 1986); *Fisher v. State*, 668 P.2d 1152, 1155 (Okla. Crim. App. 1983). Accordingly, even assuming the

notice/endorsement provisions identified by Thomas create a constitutionally-protected liberty interest, it is not the expansive interest asserted by Thomas.

A second and equally fundamental reason Thomas' claim fails is that identified by the OCCA and federal district court: Thomas waived this claim of error when he failed to withdraw his announcement of readiness for trial and failed to request a continuance. *See Thomas I*, 811 P.2d at 1341-42 (collecting cases for proposition that failure to request continuance operates as waiver of belated endorsement and noting that Thomas did not so request); Dist. Ct. Order at 49-50 (collecting cases and noting that Oklahoma waiver rule has been consistently and regularly applied). Despite Thomas' assertions to the contrary, the trial record clearly supports the OCCA's waiver conclusion. The record reveals that defense counsel objected the morning of the trial to the prosecutor's belated endorsement of the three witnesses and stated, "In this particular case I'm not moving for a continuance . . . , but I would ask the Court to prohibit the use of testimony of three late endorsements of witnesses." After some discussion in the trial judge's chambers about the content of the testimony that would be provided by the three witnesses, the state trial court offered counsel a forty-eight-hour continuance to investigate and prepare for the testimony of the witnesses. In response, counsel noted that although he had not discussed the specifics of the proffered testimony of the three witnesses with Thomas, a subject he wished to

further discuss with Thomas, he had discussed the issue generally and Thomas had made clear "that no matter what he wants to go ahead with this trial today." Thereafter, the state trial court denied Thomas' motion to exclude the witnesses and took a short recess to let defense counsel inform Thomas what had transpired during the hearing. After the recess, defense counsel raised no further objections regarding the use of the belatedly-endorsed witnesses and continued with the trial without ever requesting a continuance. As this recitation should demonstrate, the OCCA's determination that Thomas waived this error is well supported by the record and is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d), (e).[9]

3.      *Hearsay Evidence*

Thomas asserts that hearsay blurted out by witness Mary Wofford during the prosecutor's direct examination rendered his trial fundamentally unfair. Mary Wofford is Thomas' sister-in-law. At trial, Wofford testified as follows with

---

[9]In a single conclusory paragraph, Thomas asserts that if this issue was waived at trial, his counsel was ineffective for failing to seek a continuance. This three-sentence argument, which fails to cite, let alone apply, the controlling framework from *Strickland v. Washington*, 466 U.S. 668 (1984), is so superficially developed that this court deems it waived. *See Franklin Sav. Corp.*, 180 F.3d at 1128 n.6. Even assuming the issue is adequately briefed and is not subject to procedural bar, this court agrees with the district court that Thomas has failed to meaningfully demonstrate any prejudice flowing from the decision not to seek a continuance. *See* Dist Ct. Order at 40.

regard to a telephone conversation she had with her niece, Thomas' daughter, Regina Thomas:

> Q. Now, without going into any details what was the purpose for Regina Thomas calling you that evening?
> A. Oh, we–
> [Thomas' Counsel]: I've got to object to the hearsay, Judge.
> [Prosecutor]: Your Honor, it's not offered–
> [Wofford]: She's my niece. She called me–
> [Prosecutor]: Excuse me, Ms. Wofford–
> THE COURT: Ma'am, if you'll hold on for just a second.
> [Wofford]: Okay.
> [Thomas' Counsel]: That obviously calls for hearsay.
> [Prosecutor]: Your Honor, I don't believe it could–We're offering not at this point for the truth of what was said by Ms. Thomas but just the proof there was a conversation, and Ms. Thomas will be called, so she's not unavailable.
> THE COURT: Well, I'm going to sustain the objection to the form of your last question.
> [Prosecutor]: Okay.
> THE COURT: You may recommence your direct examination.
> Q. In this conversation did–Well, let me ask you: What time, about, did Regina Thomas call you that [] evening?
> A. Oh, it was probably between 8:00 and 10:00.
> Q. Did she tell you anything in that conversation that you recall?
> A. Well, she just told me that–
> [Thomas' Counsel]: I've got to object to the hearsay, Judge.
> *THE WITNESS: –that Derrell killed–*
> [Prosecutor]: Don't–Don't answer yet.
> THE COURT: Wait a minute Ms. Wofford. I'm going to sustain the objection.

On direct appeal to the OCCA, Thomas asserted that Wofford's hearsay statement prejudiced his ability to receive a fair trial. The OCCA rejected this claim on three grounds: (1) Thomas' objection had been sustained and the

-22-

testimony not admitted; (2) Thomas' "failure to request admonition of the jury after the witness ignored requests to stop is in the nature of invited error"; and (3) considered against the "great" evidence of guilt, the remark was harmless. *Thomas I*, 811P.2d at 1343.[10]

On habeas review, the federal district court concluded that the OCCA's decision that Wofford's statement was harmless was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). In particular, the district court noted that a state court's evidentiary rulings would not support the grant of the writ of habeas corpus unless the ruling "'was so prejudicial in the context of the proceedings as a whole that [the petitioner] was deprived of the fundamental fairness essential to the concept of due process.'" Dist Ct. Order at 51 (quoting *Nichols v. Sullivan*, 867 F.2d 1250, 1253 (10th Cir. 1989)).[11] In light of the substantial evidence of

---

[10]In a separate opinion concurring in the result, two judges of the OCCA rejected the majority's assertion that Thomas' failure to request a curative admonition to the jury should be considered in resolving this claim. *See Thomas I*, 811 P.2d at 1353 (Brett, J., concurring in the result). Those judges agreed, however, that the hearsay was harmless "in light of the substantial evidence of guilt presented" by the prosecution. *Id.* (Brett, J., concurring in the result).

[11]*See also Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) ("On habeas review, we will not disturb the state court's evidentiary rulings unless the appellant demonstrates that the court's error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." (quotation omitted)).

Thomas' guilt, the district court concluded that it was unlikely the jury based its decision on "three words blurted out by a witness that were never actually admitted into evidence." *Id.* at 55

Upon review of the entire record in this case, considering the error "in relation to all else that happened"[12] at trial, we agree with the district court and conclude that the OCCA's decision is not unreasonable. *See* 28 U.S.C. § 2254(d)(1). First, as noted by the district court, the state trial court sustained defense counsel's objection, refusing to admit Wofford's statement into evidence. Although Thomas did not request a specific cautionary instruction, the jury was specifically instructed to consider only the evidence introduced at trial. Furthermore, Regina Thomas testified immediately after Wofford. Regina Thomas confirmed that she had called Wofford shortly after the murder, but indicated that she had "just told her that Janie Powell had been killed." Finally, the evidence of Thomas' guilt, although circumstantial, was, as set out in the

---

[12]*Brecht v. Abrahamson*, 507 U.S. 619, 643 (1993) (Stevens, J., concurring). This court recognizes that the applicability of *Brecht* after the passage of the AEDPA is less than clear. *See Bryson v. Ward*, 187 F.3d 1193, 1205 n.10 (10th Cir. 1999) (declining to decide question of continued applicability of *Brecht*), *cert. denied sub nom.*, *Bryson v. Gibson*, 120 S. Ct. 1566 (2000); *id.* at 1210-11 (Briscoe, J., concurring) (asserting that *Brecht* is no longer applicable). Because the applicability or non-applicability of *Brecht* does not control the disposition of this issue, we do not decide the question here. Nevertheless, in the process of determining whether a state-court decision on harmlessness is reasonable under the AEDPA, *Brecht* appropriately directs this court to consider the error in light of the entire record rather than in isolation.

background section of this opinion, exceedingly strong.  The OCCA decision that the jury decided the case based on that properly-admitted evidence, instead of the hearsay blurted out by Wofford, is certainly reasonable.  Accordingly, the district court did not err in denying habeas relief on this ground.

## C.  Habeas Claims Relating to the Penalty Phase

### 1.      *Heinous, Atrocious, and Cruel Aggravating Circumstance*

Thomas argues that Oklahoma's heinous, atrocious, or cruel aggravating circumstance is unconstitutionally vague in that it fails to adequately narrow the class of murders wherein the perpetrator is subject to the death penalty.  *See generally Maynard v. Cartwright*, 486 U.S. 356 (1988); *Godfrey v. Georgia*, 446 U.S. 420 (1980).  Even assuming the heinous, atrocious, or cruel aggravator is constitutional on its face, Thomas asserts that the state did not present sufficient evidence that his conduct during the murder of Powell fell within the parameters of the aggravator.  *See generally Lewis v. Jeffers*, 497 U.S. 764 (1990).[13]

---

[13]The *Lewis v. Jeffers* majority held that "federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent" violation of the United States Constitution; a state court finding of an aggravating circumstance "is arbitrary and capricious if and only if no reasonable sentencer could have concluded" the defendant's acts fell within the parameters of the aggravator.  497 U.S. 764, 780, 783 (1990).

As Thomas candidly admits in his brief on appeal, each of his challenges to the facial validity of Oklahoma's heinous, atrocious, or cruel aggravator was recently rejected by this court in *Moore*, 195 F.3d at 1175-76. In fact, "[w]e have held that the 'heinous, atrocious, or cruel' aggravating circumstance as narrowed by the Oklahoma courts after [the Supreme Court's decision in] *Maynard* to require torture or serious physical abuse characterized by conscious suffering can provide a principled narrowing of the class of those eligible for death." *Medlock*, 200 F.3d at 1321. Because this court's decision in *Moore* completely disposes of Thomas' facial challenge to Oklahoma's heinous, atrocious, or cruel aggravator, and because this panel is bound by the decision in *Moore*,[14] we conclude that the district court did not err in denying Thomas habeas relief on this ground.

In addition to the facial challenge rejected above, Thomas mounts an as-applied challenge to Oklahoma's heinous, atrocious, or cruel aggravator. As correctly noted by Thomas, under Oklahoma law, only those murders "'preceded by torture or serious physical abuse'" will be deemed to be heinous, atrocious, or cruel. *Id.* (quoting *Turrentine v. State*, 965 P.2d 955, 976-77 (Okla. Crim. App. 1998). The OCCA

---

[14]*See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.").

has identified two kinds of cases in which "torture or serious physical abuse" is present: those characterized by the infliction of "great physical anguish" and those characterized by the infliction of "extreme mental cruelty." *Cheney v. State*, 909 P.2d 74, 80 (Okla. Crim. App. 1995). In the mental cruelty context, the OCCA has emphasized that the torture required for finding the "heinous, atrocious, or cruel" aggravator "must produce mental anguish in addition to that which of necessity accompanies the underlying killing." [*Turrentine*, 965 P.2d at 976.] As the majority notes, "[w]ith respect to the physical anguish branch of the Oklahoma test, '[a]bsent evidence of conscious physical suffering by the victim prior to death, the required torture or serious physical abuse standard is not met.'" *Cheney*, 909 P.2d at 80 (quoting *Battenfield v. State*, 816 P.2d 555, 565 (Okla. Crim. App. 1991)).

*Medlock*, 200 F.3d at 1324 (Lucero, J., concurring). Thomas does not, and could not, contest that Powell suffered a severe beating. *Thomas I*, 811 P.2d at 1349 ("Certainly [the evidence adduced at trial] supports a finding that Powell was subjected to serious physical abuse allowing us to proceed to a determination as to whether the murder was especially heinous, atrocious or cruel."). Thus, the only question in this habeas appeal is whether Oklahoma adduced sufficient evidence from which a reasonable fact finder could have concluded beyond a reasonable doubt[15] that Powell was conscious during some part of the beating.

_____

[15]*See Lewis*, 497 U.S. at 783 (holding that a state court finding of an aggravating circumstance "is arbitrary and capricious if and only if no reasonable sentencer could have concluded" the defendant's acts fell within the parameters of the aggravator); *Medlock*, 200 F.3d at 1325 (Lucero, J., concurring) (noting that even after passage of the AEDPA, this court "review[s] whether the sentencer properly found sufficient evidence of torture or serious physical abuse under the deferential rational factfinder standard established in *Jackson v. Virginia*, 443

(continued...)

*See Spears v. State*, 900 P.2d 431, 443 (Okla. Crim. App. 1995) (holding that "[c]onscious[ness] . . . is the critical inquiry in determining whether a murder was especially heinous, atrocious or cruel").

After an exacting review of the trial record, we hold that no reasonable fact finder could conclude from the evidence presented that Powell consciously suffered prior to her death and that the decision of the OCCA to the contrary is unreasonable.  In so holding, this court recognizes that "[w]hether [s]ection 2254(d)(1) or 2254(d)(2) applies to our review of the sufficiency of the evidence to support an aggravator is unsettled in our Circuit because we have applied both in the past, sometimes analyzing the sufficiency of the evidence as a factual question and sometimes as a legal question."  *Medlock*, 200 F.3d at 1321 n.6 (citing *Moore*, 195 F.3d at 1176-77).  Even assuming that the OCCA's sufficiency determination is a factual one entitled to a presumption of correctness, this court is clearly convinced, *see* 28 U.S.C. § 2254(e)(1), that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d)(2).

_____

[15](...continued)
U.S. 307 (1979) by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the [aggravating circumstance] beyond a reasonable doubt" (quotations omitted)); *id.* at 1322 (majority opinion) (applying *Jackson*'s rational factfinder test).

In support of its contention that the murder of Powell was heinous, atrocious, or cruel, the prosecution produced the testimony of Dr. M. F. Merchant, a forensic pathologist employed by the state of Oklahoma. Dr. Merchant testified that Powell "died as a result of multiple blunt force injuries and shock force injuries, and among the blunt force injuries included manual strangulation." In particular, Dr. Merchant testified that Powell had been stabbed twice in the upper torso and twice in the abdomen; that she had suffered a large contusion to the left side of her face, resulting in a fracture of the nasal bone, lower jaw, adam's apple, and hyoid bone, as well as extensive hemorrhaging; that she had suffered a less severe, but nonetheless significant, contusion to the right side of her face, resulting in hemorrhaging; that she had a large contusion to the right side of her neck and right shoulder, resulting in a large purplish bruise and hemorrhaging in the underlying muscles; and that she had a contusion to the back of her head that resulted in a laceration and hemorrhaging. When asked if he could tell the order in which Powell's wounds were inflicted, Dr. Merchant replied as follows: "The two stab wounds that I saw on the abdomen, I would say because of the very nature of being post-mortem, would be the last to be inflicted. The others, I cannot tell which was inflicted before or after." Dr. Merchant was not asked, and did not opine, as to whether any of the blows noted above likely would have rendered Powell unconscious.

Other than the testimony of Dr. Merchant, the only other evidence adduced by the prosecution bearing on the applicability of the heinous, atrocious, and cruel aggravator was the testimony of officer Robert Robertson who testified that Powell's "dentures had been expelled from her mouth and one of the dentures had been broken in half." There was no evidence that a struggle had taken place, that Powell had defensive wounds, or that Thomas had any wounds on his body consistent with a struggle when he was arrested shortly after the murder. While Powell's neighbor was close enough to observe many details of Thomas' presence on the night of the murder, he did not testify to hearing any noises, voices, or screams.[16]

Against this remarkably limited evidentiary backdrop, the OCCA concluded as follows:

> Although there is no direct evidence that Powell suffered before her death, there is certainly circumstantial evidence to support such a theory. The medical examiner's testimony that two of the stab wounds were post mortem leads to the conclusion that the other injuries occurred prior to the stabbing. The injuries to Mrs. Powell resulted in a great loss of blood. *It is highly improbable that Powell*

---

[16]Kinnich testified that he lived approximately 200 feet from Powell's home, that he observed Thomas and Powell arrive at Powell's the night of the murder, and that he saw Thomas depart 30 minutes later. Kinnich was close enough to Powell's house that he could describe Thomas' distinctive manner of dress, both the color of Thomas' car and the fact that it was missing the hubcaps on the driver's side, that Thomas was carrying a white envelope-like object in his hand, and could ultimately choose Thomas out of a police lineup and identify him at trial.

*would have been beaten, strangled and stabbed if she was rendered immediately unconscious by the first blow*.  We find that the evidence supports a finding that [the] murder was especially cruel in that the killing was pitiless and appears to have been designed to inflict a high degree of pain on the victim.

*Thomas*, 811 P.2d at 1349 (emphasis added).  As should be apparent from the above passage, the entirety of the OCCA's finding of conscious suffering is based on the following inference: it is unreasonable to assume that a murderer would continue striking a murder victim if the first landed blow rendered the victim unconscious.  *See id.*  Whatever the merits of such an inference generally,[17] in

---

[17]This court need not decide the question of the general viability of such an inference in this case because the inference fails for other reasons.  Nevertheless, we would be remiss if we failed to note that the inference appears to raise serious constitutional questions about whether Oklahoma's heinous, atrocious, or cruel aggravator legitimately narrows the class of those eligible for death.  *See Richmond v. Lewis*, 506 U.S. 40, 46 (1992) ("The relevant Eighth Amendment law is well defined. . . .  [A] statutory aggravating factor is unconstitutionally vague if it fails to furnish principled guidance for the choice between death and a lesser penalty.").  Oklahoma adopted the "torture or serious physical abuse" overlay to the heinous, atrocious, or cruel aggravator, with its concomitant requirement of conscious suffering, for the very reason that Oklahoma's prior, unrefined version of the aggravator had been struck down by the Supreme Court as vague and overly broad.  *See Maynard v. Cartwright*, 486 U.S. 356, 363-64 (1988).  The inference adopted by the OCCA, however, appears to completely unwind the requirement of conscious suffering: in every murder committed with more than one blow an inference would arise that the murder was heinous, atrocious, or cruel because no reasonable murderer would continue beating the victim if she had become unconscious after the first blow.  *See Thomas I*, 811 P.2d at 1349.  There exists, at a minimum, a serious constitutional question as to whether an aggravator which makes eligible for the death penalty all murderers who strike more than one blow adequately narrows the class of murderers eligible for the death penalty.  *See Maynard*, 486 U.S. at 361-62.

-31-

light of the evidentiary record in this case, the inference is clearly unreasonable. *See* 28 U.S.C. § 2254(d)(2), (e)(1). The testimony of Dr. Merchant is clear: Thomas did, in fact, stab Powell twice after her death. In light of this uncontradicted testimony, it is wholly unreasonable to infer that Thomas would not have inflicted such blows once Powell became unconscious. It makes no sense to assume that a murderer would not continue to inflict blows after a victim fell unconscious when faced with uncontroverted expert testimony that the same murderer continued to inflict blows after the victim was dead. Even in light of the heightened deference accorded the decisions of state courts under the provisions of the AEDPA, the decision of the OCCA cannot withstand the review for reasonableness mandated by the AEDPA. *See id.*

Because the OCCA's sufficiency finding as to the heinous, atrocious, or cruel aggravator is based exclusively on its stated inference, and because the drawing of that inference is clearly unreasonable in light of the undisputed contrary trial testimony of the state medical examiner, this court concludes that no rational fact finder could have found the existence of the aggravator beyond a reasonable doubt. Because the only aggravating circumstance advanced by the state of Oklahoma at trial is not supported by sufficient evidence, Thomas' death penalty cannot stand.

> 2. *Penalty Phase Verdict Form and Prosecutor's Personal Belief as Mitigating Evidence*

In light of this court's conclusion above that the sole aggravating circumstance presented by the state is not supported by the record and that Thomas' death penalty must therefore be vacated, we need not reach Thomas' remaining contentions of error relating to the penalty phase of his trial.

## IV. CONCLUSION

For those reasons set out above, this court concludes that none of the guilt-phase errors advanced by Thomas denied him a fundamentally fair trial. Accordingly, this court **AFFIRMS** the district court's denial of relief as to the validity of Thomas' murder and robbery convictions. This court reaches a different conclusion with regard to the validity of Thomas' death sentence. Because the only aggravator advanced by the state at trial is not supported by sufficient evidence, Thomas' death penalty cannot stand. We, therefore, **REVERSE** the district court's denial of habeas relief as to Thomas' death sentence and **REMAND** to the district court to grant the writ. Thomas must ultimately be sentenced to life imprisonment in accord with applicable Oklahoma law.