Peggy Sue **SAIZ**, Petitioner–Appellee,

v.

Brian **BURNETT**, Acting Executive Director of the Colorado Department of Corrections, and Ken Salazar, Attorney General of the State of Colorado, Respondents–Appellants.

No. 01–1299.

United States Court of Appeals, Tenth Circuit.

July 23, 2002.

Walter L. Gerash of Walter L. Gerash Law Firm, P.C., Denver, CO, for Petitioner–Appellee.

Michael J. Milne, Senior Deputy District Attorney, Special Attorney General (Robert S. Grant, District Attorney, Steven L. Bernard, Assistant District Attorney, Special Attorney General, with him on the briefs) Brighton, CO, for Respondents–Appellants.

Before SEYMOUR, BALDOCK, and KELLY, Circuit Judges.

BALDOCK, Circuit Judge.

Respondents appeal the district court's order granting Petitioner Peggy Sue Saiz

a writ of habeas corpus and ordering Petitioner's conditional release. *See* 28 U.S.C. § 2254. The district court granted relief on Petitioner's claim that the state trial court violated her Sixth Amendment right to confront witnesses by excluding impeachment information in the form of opinion testimony concerning an expert witness' poor character and reputation. On direct appeal, the Colorado Court of Appeals rejected this claim concluding that although the trial court erred by excluding the testimony, the error was harmless beyond a reasonable doubt. On habeas review, the federal district court concluded the error was not harmless beyond a reasonable doubt and granted habeas relief. On appeal, Respondents assert the district court failed to give the state court decision the deference required under the Antiterrorism and Effective Death Penalty Act. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253. We reverse and remand with instructions to consider both this claim and Petitioner's remaining claims under the proper standard of review.

## I.

On November 9, 1990, Petitioner shot her husband, George Saiz, four times in the back of the head while he slept. Afterwards, to simulate a burglary, she collected valuable items from their home and stored them at her mother's home and at the home of a man with whom she was having an affair. Petitioner initially told police she had returned home to find her husband dead and the home burglarized. After repeated police interviews, Petitioner admitted she shot and killed her husband but claimed she acted in self defense. Petitioner asserted George Saiz had physi-

cally abused her over the course of their four-year marriage and, on the day of the homicide, had threatened to kill her.

A Colorado grand jury indicted Petitioner on one count of first degree murder. Petitioner initially pled not guilty by reason of insanity and asserted a defense of impaired mental condition. The court ordered a pretrial examination pursuant to Colorado statute, and appointed Dr. Kathy Morall to examine Petitioner. Dr. Morall issued two psychiatric reports, concluding in both that Petitioner was legally sane when she shot and killed her husband. After a sanity trial, at which Dr. Morall and several defense experts testified, a jury determined Petitioner was legally sane at the time of the shooting.

At her trial on the substantive charges, Petitioner withdrew the impaired mental condition defense and argued she acted in self defense. The defense presented several medical and psychological expert witnesses, each of whom testified Petitioner was a battered woman and had killed her husband in self defense. In rebuttal, the prosecution called Dr. William Hansen, who reviewed the test results relied upon by the defense's experts and testified that the psychological tests given were insufficient to support a conclusion that Petitioner suffered from battered women's syndrome. The prosecution also called five physical therapists and three doctors who had treated or evaluated Petitioner for job-related injuries in the year preceding the shooting. Each testified Petitioner did not have unexplained bruises or other injuries, and did not appear to exhibit symptoms normally associated with battered women's syndrome. Over Petitioner's objection,[1] the trial court also allowed Dr.

---

**1.** Colorado law prohibits the prosecution from using, at trial on the substantive offense, evidence first derived from communications

between a defendant and a court-appointed psychiatrist during a sanity examination. Colo.Rev.Stat. § 16–8–107(1) (1986). The

Morall to testify in rebuttal. Dr. Morall testified that, in her expert opinion as a psychiatrist, Petitioner did not suffer from battered women's syndrome.

After admitting Dr. Morall as an expert, the court restricted Petitioner's attempts to impeach Dr. Morall. Although permitting defense counsel to cross-examine the psychiatrist on her role in other trials and her possible bias in favor of the prosecution, the court did not allow Petitioner to call in surrebuttal two criminal defense attorneys who had previously worked with the psychiatrist and would offer impeachment evidence in the form of opinion testimony concerning Dr. Morall's poor character and reputation for truthfulness.

The jury returned a guilty verdict on the first degree murder charge and the trial court sentenced Petitioner to life imprisonment without possibility of parole. On direct appeal, the Colorado Court of Appeals affirmed the conviction. The decision addressed and rejected four claims, including the claim at issue in this appeal. With respect to that claim, the appellate court agreed the trial court committed constitutional error in precluding the proffered testimony. The court concluded, however, that the error was harmless beyond a reasonable doubt in light of the extensive cross-examination the trial court did permit, and the strength of the prosecution's remaining evidence. The Colorado and United States Supreme Courts denied certiorari.

Petitioner, through counsel, subsequently filed a federal habeas petition reasserting the four claims raised in her direct appeal. The federal district court determined the Colorado appellate court's conclusion that Dr. Morall's testimony was not critical to the prosecution's case was

"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" pursuant to 28 U.S.C. § 2254(d)(2). The court then concluded the Colorado court's application of the *Chapman* harmless error analysis was incorrect because the exclusion of the testimony impeaching Dr. Morall's critical testimony was not harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Accordingly, the court granted Petitioner relief and ordered her conditional release. The district court did not reach the merits of the remaining three claims. Respondents appeal.

## II.

■ Because Petitioner filed her federal habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of that law govern the scope of our review. Under the AEDPA, a writ of habeas corpus may not be issued with respect to any claim adjudicated on the merits in the state court unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently on a set of materially indistinguishable facts. *Penry v. Johnson,* 532 U.S. 782, 792–793, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (quoting *Williams v. Taylor,* 529

court limited Dr. Morall's testimony to opinions based on materials and information obtained outside the interviews with Petitioner.

U.S. 362, 404–406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A state court decision is an "unreasonable application" of federal law if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Id.* When a federal habeas court is making an "unreasonable application" inquiry, it should ask whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* "[E]ven if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Id.* In sum, the AEDPA bars a federal habeas court from granting relief unless the state court decision involves either 1) application of an incorrect legal standard or principle; or 2) an objectively unreasonable application of the correct legal standard or principle.

■ The state court decision at issue is the Colorado appellate court's conclusion that the trial court error in excluding the proffered testimony was harmless. The Colorado Court of Appeals reviewed the trial court's error under the correct standard. This Court has expressly confirmed that the "harmless beyond a reasonable doubt" standard the Supreme Court articulated in *Chapman,* 386 U.S. at 24, 87 S.Ct. 824, remains the proper standard for state courts to apply when evaluating instances of constitutional error on direct appeal. *See Hale v. Gibson,* 227 F.3d 1298, 1324–25 (10th Cir.2000). Thus, the proper question on federal habeas review is whether the Colorado appellate court's

application of the *Chapman* standard was objectively unreasonable. *See Penry,* 532 U.S. at 792–793, 121 S.Ct. 1910.

■ The district court erred by failing to analyze the state court's decision for objective reasonableness under the AEDPA.[2] The district court concluded that the Colorado appellate court's application of *Chapman* was incorrect. As the Supreme Court emphasized in *Penry,* however, the issue upon habeas review is not whether the state court decision applied a legal standard incorrectly, but whether the state court's application was "objectively unreasonable." Because the district court failed to employ the appropriate standard of review, we reverse and remand with instructions to consider both this claim and Petitioner's remaining claims under the appropriate standard.

Upon remand, if the district court concludes the Colorado court's application of *Chapman* was objectively unreasonable, the court should engage in an independent harmless error analysis applying the standard articulated in *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (whether the error "had substantial and injurious effect or influence in determining the jury's verdict"). *See Hale,* 227 F.3d at 1325 (applying *Brecht* in conjunction with the AEDPA amendments).

### III.

We reverse and remand with instructions to review the state court's resolution of petitioner's claims under the correct standard. If the district court concludes

---

2. The court also erred by reviewing the state appellate court's decision under 28 U.S.C. § 2254(d)(2). "Harmless error is a mixed question of law and fact." *Johnson v. Gibson,* 254 F.3d 1155, 1166 (10th Cir.2001). The district court should review the Colorado court's harmless error analysis under the standard articulated in 28 U.S.C. § 2254(d)(1), rather than the standard applied to a trial court's factual findings under § 2254(d)(2). *See id.* (applying § 2254(d)(1) to state court's harmless error analysis).

the state court decision involved an unreasonable application of the *Chapman* harmless error standard, the court should engage in an independent harmless error analysis applying the standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

REVERSED AND REMANDED.