**Roger L. MOSS, Petitioner,**

v.

**David R. McKUNE, et al., Respondents.**

**No. 02–3087–WEB.**

United States District Court,
D. Kansas.

March 7, 2003.

Jared S. Maag, Office of Attorney General, Topeka, KS, for Respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

BROWN, Senior District Judge.

Roger L. Moss petitions this Court for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 (Doc. 1). For the reasons set out below, the petition is denied.

## I. PROCEDURAL HISTORY

Petitioner was charged in Kansas state court with possession of cocaine with prior convictions, sale of cocaine, and no tax stamps. The first trial resulted in a hung jury. In the second trial, the State proffered testimony from a previously confidential informant. The State, however, did not disclose that the informant was facing drug charges at the time she testified. The second trial also differed in that the State introduced one of Petitioner's prior drug convictions into evidence. This time, the jury found Petitioner guilty.

Petitioner took a direct appeal to the Kansas Court of Appeals (KCA). Letters in the record show that Petitioner and his court-appointed counsel disagreed regarding the issues to be raised on direct appeal. While Petitioner did not dispute the issues his counsel raised, he insisted on numerous other issues which his appellate counsel refused to brief.

Among the issues briefed were the State's failure to disclose the informant's pending drug charge and admission of the Petitioner's prior drug conviction. Petitioner's appellate counsel also contested the admission of testimony regarding prior contacts between the informant and the Petitioner, as well as the propriety of comments the prosecutor made in closing arguments. In addition, appellate counsel disputed the manner in which Petitioner's two prior convictions were used to enhance his sentence. Finally, counsel raised cumulative error. The KCA affirmed Petitioner's conviction and sentence in *State v. Moss*, 992 P.2d 826 (Kan.App. Dec.23, 1999) (Table) (79,828), and the Kansas Supreme Court denied review.

Petitioner then sought collateral review in the state district court. In a pro se petition he again contested the manner in which his two prior convictions were used to enhance his sentence. He argued for the first time, however, that the pleas in those cases were unlawful. He also alleged that he was convicted on perjured testimony, and he claimed ineffective assistance of trial counsel. Petitioner then listed ten issues his counsel had not briefed on direct appeal, claiming in each instance that he was provided ineffective assistance of appellate counsel. Finally, Petitioner maintained that the evidence was insufficient, and that his due process and equal protection rights were generally violated. The district court denied the petition without a hearing.

Petitioner then appealed to the KCA, where he was provided with another court-appointed counsel. The KCA refused to consider the use of the prior convictions for sentence enhancement because the issue had been resolved on direct appeal. The KCA also held that the Petitioner could not collaterally attack the lawfulness of the pleas in the prior convictions. The KCA refused to consider the allegations of perjured testimony and ineffective assistance of trial counsel, this time because they had not been raised on direct appeal. The KCA then considered and rejected each of the ineffective assistance of appellate counsel claims. Finally, the KCA found that the evidence was sufficient, and that Petitioner had not been denied due process or equal protection. *Moss v. State*, 37 P.3d 47 (Kan.App. Dec.14, 2001)(Table) (85,745). The Kansas Supreme Court again denied review.

In the instant pro se habeas action, filed April 3, 2002, Petitioner raises all of the arguments previously considered by the Kansas state courts, and some new ones as well. The State has filed an Answer and Return, and Petitioner provides a reply styled "Traverse." In his reply, Petitioner urges this Court to consider the brief pre-

pared by his counsel for the state collateral appeal in addition to his instant pro se petition [1]. The Court has carefully considered these memoranda along with the entire record, including plea transcripts for the two prior drug convictions, and the transcripts and files from both Petitioner's first and second trial.

## II. FACTS

On August 1, 1996, Petitioner was arrested in Wichita, Kansas, during an undercover "buy-bust" operation. The police had arrested an informant the previous evening, and the informant agreed to identify certain drug dealers in order to avoid charges. The informant named Petitioner among others. At the direction of the police, the informant then called Petitioner and arranged a meeting at a motel.

An undercover officer went to the motel along with the informant. The undercover officer entered the motel room wearing a wire, completed a purchase of crack cocaine from the Petitioner, and then gave a signal to officers waiting outside the motel room. The officers made a forced entry and arrested Petitioner and two other individuals who were present. Additional facts will be stated as necessary to analyze each issue raised by Petitioner.

## III. STANDARD OF REVIEW

Under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

28 U.S.C. § 2254(d). A state court decision is contrary to federal law when the state court applies a rule which contradicts a rule established in United States Supreme Court cases, or when the state court reaches a different result than a Supreme Court case on materially indistinguishable facts. *See Torres v. Mullin,* 317 F.3d 1145, 1150 (10th Cir.2003)(citing *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A state court decision is an unreasonable application of Supreme Court precedent when the state court correctly identifies the legal principle at issue but unreasonably applies the principle to the facts at hand. *See id.* at 1151. The application of the law must be unreasonable, not simply erroneous or incorrect. *Id.* In addition, a state court's factual determinations are presumed to be correct, and the prisoner bears the burden to rebut the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## IV. CLAIMS NOT PRESENTED IN STATE COURT

Review is barred entirely on any claims not presented to the state courts. *See* 28 U.S.C. § 2254(a) & (c); *Thomas v. Gibson,* 218 F.3d 1213, 1220–21 (10th Cir.2000). A prisoner, in other words, must first exhaust state remedies on all claims. If any claims not raised before the state court are

---

1. Petitioner's petition also includes a copy of the pro se memorandum from the state collat-

eral appeal.

now procedurally barred in state court, "the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Id.*

## A. USE OF PRIOR CONVICTIONS FOR SENTENCE ENHANCEMENT

■ Petitioner contended in state court that the use of his prior drug convictions for sentence enhancement violated state law, but he now argues that the state court also violated federal law in counting his prior convictions. If Petitioner believed his sentencing violated federal law, he was obliged to present these arguments to the state courts before seeking federal collateral review. *See Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). This "exhaustion doctrine" is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *See Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir.1994) (internal quotations omitted). Because Petitioner did not present his federal claim in state court, where it is now barred, *State v. Neer*, 247 Kan. 137, 141, 795 P.2d 362 (1990), he has procedurally defaulted this claim for purposes of federal habeas relief.

■ As for the holding of the Kansas Court of Appeals regarding state law, this Court is bound by a state court's interpretation of its own law. *Hawkins v. Mullin*, 291 F.3d 658, 662–63 (10th Cir.2002).

## B. MISSION OF PRIOR CONVICTION IN GUILT PHASE

Similarly, although Petitioner complained on direct appeal about the admission into evidence of his prior drug conviction, his arguments were based solely on state law[2]. Petitioner claimed that the evidence violated K.S.A. § 60–455, a claim the Kansas Court of Appeals carefully examined and rejected. It is not the province of this Court to review the Kansas Court of Appeals' construction of K.S.A. § 60–455. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Shipley v. Oklahoma*, 313 F.3d 1249, 1251 (2002). Petitioner failed to exhaust his state remedies on this issue, so he has procedurally defaulted this issue in federal court.[3] *See Thomas*, 218 F.3d at 1220–21; *Neer*, 247 Kan. at 141, 795 P.2d 362.

## C. ADMISSION OF PRIOR CONTACTS WITH THE INFORMANT

Petitioner also contested the admission of evidence regarding his prior contacts with the informant. Petitioner maintained at trial that the phone conversation with the informant which lead to the meeting at the motel concerned prostitution, not drugs. The phone conversation was taped by the police, and on the tape the Petitioner referred to a prior contact with the informant. In his cross examination of the informant, Petitioner's counsel strongly insinuated that the prior contact was for prostitution. On redirect, the State then established that the prior contact was to purchase drugs.

---

2. Petitioner did argue on direct appeal that he had been denied a fair trial by cumulative trial error, and he listed the admission of the prior conviction as one of the alleged errors. He still maintained, however, that the admission was error because it purportedly violated K.S.A. § 60–455, not federal law. The Court considers the cumulative error issue in section VI(C).

3. Because the Court must consider whether the prosecutor's reference to the prior conviction in closing arguments violated federal law, the Court revisits this issue in section VI(A)(2)(a).

The trial court held that Petitioner's counsel had opened the door for this testimony, and the KCA agreed. Once again, however, Petitioner based his arguments solely on state law. At no point did Petitioner argue that a federal law had been violated by the admission of testimony regarding the prior contact. As with the previous claims, this Court's review is barred on any issue not presented to the state court. *See* 28 U.S.C. § 2254(a) & (c).

## D. GENERAL CONSPIRATORIAL ALLEGATIONS

In his "Traverse" reply, Petitioner makes numerous other allegations against the State. He alleges in a conclusory fashion that after the first jury deadlocked, the prosecutor proceeded with a "vindictive mind." Petitioner asserts, without evidence or even specificity, that the prosecutor destroyed exculpatory evidence and conspired with the police and other prosecution witnesses to mislead the trial court.

■ In order to warrant habeas review, Petitioner must provide *facts* sufficient to show a constitutional violation. *See Sanchez v. Mondragon,* 858 F.2d 1462, 1464 (10th Cir.1988) (overruled on other grounds, *United States v. Allen,* 895 F.2d 1577 (10th Cir.1990)). Not only are Petitioner's conspiratorial allegations raised for the first time in his reply to the State's Answer and Return, they are nothing more than suspicion and innuendo. The Court will not consider them further.

## V. CLAIMS PROCEDURALLY DEFAULTED IN THE STATE COURT

Petitioner argued for the first time on state collateral appeal that he was denied due process under the Fourteenth Amendment by reason of perjured testimony, and that he was provided with ineffective assistance of trial counsel. As already noted, the KCA refused to consider these allegations because they had not been raised on direct appeal. The State urges the Court to apply the procedural bar doctrine to Petitioner's allegation of perjured testimony.

Under the procedural bar doctrine,

> [the] court cannot address claims that were defaulted in state court on independent and adequate state procedural grounds 'unless [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'

*Hamm v. Saffle,* 300 F.3d 1213, 1216 (10th Cir.2002) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Hume v. McKune,* 176 F.Supp.2d 1134, 1140 (D.Kan.2001).

"A state procedural ground is independent if it relies on state law, rather than federal law...." *English v. Cody,* 146 F.3d 1257, 1259 (10th Cir.1998). The KCA cited *Taylor v. State,* 251 Kan. 272, 278, 834 P.2d 1325 (1992), as its authority for defaulting the Petitioner's perjured testimony claim. *Taylor,* in turn, relied upon Kan. Sup.Ct. R. 183(c), which is clearly an independent state procedural ground. *See Taylor,* 834 P.2d at 1330, (disapproved on other grounds, *State v. Rice,* 261 Kan. 567, 932 P.2d 981, 1002–03 (1997)).

■ The adequacy of a state procedural bar is generally a more difficult question than its independence, however. *English,* 146 F.3d at 1259. In order to be adequate, a state default rule "must be applied evenhandedly in the vast majority of cases." *Id.* The rule in this instance, Kan. Sup.Ct. R. 183(c), provides that the collateral review "cannot *ordinarily* be used as a substitute for direct appeal ... but trial errors affecting constitutional rights *may be raised* even though the error could have been raised on appeal, provided there were exceptional circum-

stances excusing the failure to appeal." (Emphasis supplied.). The Kansas Supreme Court in *Taylor*, in fact, noted that the KCA in that case had reviewed the merits of the case even though the existence of exceptional circumstances was doubtful, and the Supreme Court did the same. *See* 834 P.2d. at 1331. The State bears the burden of proving the adequacy of the state procedural bar, *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir.1999), and based on the record before it, this Court is unable to find that Kan. Sup.Ct. R. 183(c) is applied uniformly in the vast majority of cases. *Cf. Brown v. Nelson*, 2002 WL 734769, *2 (10th Cir. April 26, 2002) (holding that the Kansas Supreme Court's refusal to consider an untimely petition for review was adequate).

The Court, therefore, will consider Petitioner's allegations concerning perjured testimony and ineffective assistance of trial counsel.

## A. ALLEGED PERJURED TESTIMONY

■ Petitioner asserts that the undercover officer perjured herself in the preliminary hearing when she testified that she never took her eyes off of the crack cocaine after she purchased it from Petitioner. Petitioner claims that he would not have been bound over for trial but for the allegedly perjured testimony.[4]

Petitioner offers *no* evidence to support his charges of perjury. Petitioner, in fact, can only point to an objection the prosecutor made when defense counsel posed a chain of custody question after the cocaine had already been admitted into evidence.

The prosecutor not unreasonably argued that the information sought was irrelevant for the purpose of the preliminary hearing, and the Petitioner deduces from this that the prosecutor was suborning perjury. There is simply no rational basis for the Petitioner's conclusion. The objection was overruled, moreover, and the trial court allowed full examination of the undercover officer regarding her visual contact with the cocaine purchased from Petitioner.

The undercover officer, moreover, did not testify that she never took her eyes off the drugs. She explained that, after she had made the purchase, she set the drugs down on a counter and lost eye contact with them for a few seconds before another officer took the drugs into custody at her direction. The other officer also testified at the preliminary hearing, confirming that he was directed to the drugs by the undercover officer, and that he found them where he was directed to look. This was enough to establish probable cause to bind Petitioner over for trial. *See* K.S.A. § 22–2902 (2002 Supp.); *State v. Berg*, 270 Kan. 237, 13 P.3d 914, 915 (2000).

The Court has carefully considered the record and can find neither a factual basis for Petitioner's perjury allegations nor a reason to believe such a basis exists.

## B. ALLEGED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

This issue is essentially a continuation of the perjury allegations. Petitioner asserts that both the undercover officer and the informant perjured themselves at trial, and he claims his trial counsel was ineffective

---

**4.** Petitioner claims that the undercover officer "lied about a material issue during the preliminary hearing . . . .," and that "[t]here is a reasonalbe [sic] probability that, if not for the false evidence (testimony), the results of the proceeding would have been different, that infact [sic] there would never had been a trial." His court-appointed counsel on state collateral appeal argued that two officers had offered "obviously contradictory testimony" at the preliminary hearing and the trial, but counsel did not assert on Petitioner's behalf that any officer actually committed perjury during the trial itself.

for failing to request some form of impeachment instruction or "witness testifying falsely (witness need not be believed)" instruction. Petitioner does not identify the specific instruction he thinks his trial counsel should have requested.

To show ineffective assistance of counsel, Petitioner must establish that his counsel's performance was constitutionally deficient, and that the deficient performance prejudiced him by depriving him of a fair trial. *See Le,* 311 F.3d at 1024 (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." *Id.* (interior quotations omitted).

█ Petitioner does not approach such a showing. Since there is no approved impeachment instruction for criminal cases in Kansas courts, his trial counsel was not wrong, much less unreasonable, for failing to request one. See PIK 3rd Criminal 52.09. The trial court, in any event, instructed the jury regarding its duty to judge the credibility of witnesses generally: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." Petitioner's counsel also conducted rigorous cross-examination of both the undercover officer and the informant, and the jury had before it any apparent contradictions between their testimony at trial and their prior statements. Based upon its review of the record, the Court is satisfied that Petitioner was not deprived of a fair trial by the conduct of his trial counsel.

## VI. CLAIMS CONSIDERED AND REJECTED BY THE STATE COURT

The Court now turns to the numerous other claims Petitioner raised before the state court. As set out above, this Court may issue a writ only when the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). The Court will consider first the claims raised on state direct appeal, and then the Court will examine the ineffective assistance of appellate counsel claims raised on state collateral appeal.

## A. CLAIMS RAISED ON DIRECT APPEAL

### 1. Alleged suppression of the pending charge against informant

█ This issue arose after trial, and the trial court denied a motion for a new trial. Petitioner presented no evidence at the hearing. The KCA held that, even if the evidence regarding the pending charge was somehow exculpatory, it was not material.

This was not an unreasonable conclusion. Evidence is material if its suppression undermines confidence in the outcome. *See Moore v. Gibson,* 195 F.3d 1152, 1165 (10th Cir.1999). The KCA noted that the informant was not a key witness because the possession and sale elements of the crimes were established by the undercover officer who actually made the buy. In addition, the possible bias of the informant was already before the jury. Petitioner's counsel rigorously cross-examined the informant regarding her deal with the police. Based on the Court's review of the record, the decision of the KCA was not contrary to, or an unreasonable application of, federal law, and the Petitioner

has not overcome the presumption in favor of the KCA's factual determinations.

## 2. Prosecutor's comments in closing argument

Petitioner maintains that the trial court violated federal law in overruling objections to two comments the prosecutor made during closing arguments. In the first, the prosecutor told the jury "we know" the Petitioner didn't have cocaine in his pockets accidentally "[b]ecause he's been convicted of it before." In the second, the prosecutor called the Petitioner's testimony "rancid," and asked "how he can come in and make those statements to you, knowing they're not true." On direct appeal, Petitioner argued the comments violated his general due process right to a fair trial.

This Court applies a two-step process in analyzing claims of prosecutorial misconduct. First, the Court must determine whether the comment was improper. Second, if the comment was improper, the Court must determine whether reversal is warranted. *See United States v. Gordon,* 173 F.3d 761, 769 (10th Cir.1999). The KCA applied a similar two-step process under *State v. McCray,* 267 Kan. 339, 345, 979 P.2d 134 (1999).

 Reversal of the state conviction is warranted only if the remarks " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Le v. Mullin,* 311 F.3d 1002, 1013 (10th Cir.2002) (quoting *Donnelly v. De-Christoforo,* 416 U.S. 637, 643, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). This requires an examination of the entire proceedings, including the strength of the evidence, and the ultimate question before the Court is the ability of the jury "to judge the evidence fairly in light of the prosecutor's conduct." *Id.*

### a. First comment

 The KCA held the first comment was a proper discussion of the evidence admitted under K.S.A. § 60–455. In other words, the KCA did not take the second step and determine whether Petitioner was thereby denied a fair trial. Given that Petitioner raised a federal constitutional issue, but the KCA addressed the claim only under state law, this Court must review the issue *de novo* and not under the deferential standard of 28 U.S.C. 2254(d). *See Romano v. Gibson,* 239 F.3d 1156, 1166 (10th Cir.2001).

 The KCA correctly observed that the prosecutor did no more than point to the prior conviction and argue that it belied the Petitioner's claim of accident or mistake. Of course, this raises the question of whether the prior conviction was admitted in violation of federal, as opposed to state, law. Even if it was error, however, it was harmless, non-constitutional error unless it had a substantial influence on the outcome or raises a grave doubt whether it had such an effect. *See United States v. Olivo,* 80 F.3d 1466, 1469 (10th Cir.1996) (citations omitted). In making such an assessment, the Court may consider the strength of the evidence and any limiting instruction given by the trial court. *Id.*

 Having reviewed the entire record of the trial, the Court concludes that any error in the admission of the prior conviction was harmless. The evidence against the Petitioner was strong. The undercover officer and two other eyewitnesses testified to the purchase, and the marked $100.00 bill used for the purchase was retrieved from Petitioner's pocket along with powder cocaine. An eyewitness also testified that Petitioner had sold cocaine to other individuals before the arrival of the undercover officer, and when searched Petitioner had $975.16 in cash, in addition to

the marked $100.00 bill. The arrest took place immediately after the purchase by the undercover officer, so identity was not an issue. Another black male left the motel room just before the purchase, but the officers waiting outside and listening on the wire heard the purchase take place after the other individual had left.

The jury also received limiting instructions. The jury was generally advised that the statements of counsel were not evidence, and that any statements not supported by the evidence should be disregarded. More specifically, the jury was instructed to consider the prior conviction "solely for the purpose of proving the defendant's intent and absence of mistake or accident." Indeed, it was in this context that the prosecutor made her first comment, explaining to the jury that the prior conviction was offered into evidence "so that you would know that this defendant didn't accidentally have cocaine in his pocket that day." This Court is convinced that the jury could judge the evidence fairly in spite of any error in the admission of the prior conviction and the prosecutor's comments upon it.

b. Second comment

■ The KCA found that the second comment was improper under Kansas case law but did not deprive Petitioner of a fair trial. In conducting its harmless error analysis, however, the KCA did not apply the "harmless beyond a reasonable doubt" standard required by the United States Supreme Court. *See Saiz v. Burnett*, 296 F.3d 1008, 1012 (10th Cir.2002) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). This Court, therefore, considers the issue *de novo*.

■ Whether or not the second comment was improper under state law, under federal law calling a defendant a "liar" is not per se prosecutorial misconduct. *See*

*United States v. Hernandez–Muniz*, 170 F.3d 1007, 1012 (10th Cir.1999). Instead, the issue must be considered in context. *See id* (citing *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

■ The KCA made factual determinations in its harmless error review, and these are not challenged by the Petitioner. The KCA found that the second comment was isolated and not "as obvious" as explicitly calling the defendant a liar. The KCA also noted that the Petitioner presented no independent evidence of the prosecutor's ill will, and that the transcript revealed none. The Court's own review of the record also shows that the credibility of the Petitioner was very much in issue. In context, then the Court finds that the prosecutor's second comment was not improper.

3. Cumulative error

The Petitioner's cumulative error claim was summarily rejected on direct appeal. The State suggests that review of this decision is not permitted after the enactment of the AEDPA, but the Tenth Circuit Court of Appeals continues to perform cumulative error analysis under the AEDPA. The Circuit Court, in fact, utilizes a more deferential standard than the AEDPA whenever federal habeas review identifies errors not considered by the state courts. *See Cargle v. Mullin*, 317 F.3d 1196, 1206–07 (10th Cir.2003). For this reason, the Court will defer its analysis until it has considered all allegations of error.

B. CLAIMS RAISED ON COLLATERAL APPEAL

1. Alleged unlawful pleas used to enhance the sentence

■ Petitioner used the state collateral appeal in the instant case to attack the

lawfulness of the guilty pleas in his two prior convictions. The KCA refused to consider the issue, and because the prior convictions are now no longer open to direct or collateral review in state court, Petitioner may not attack them in a § 2254 petition. *See Lackawanna County District Attorney v. Coss,* 532 U.S. 394, 402, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001). As the KCA noted, the only exception to this rule is a failure to appoint counsel in violation of the Sixth Amendment. *See id.* at 404, 121 S.Ct.1567. Because Petitioner had counsel at his pleas, this exception does not apply. The KCA's application of federal law was not unreasonable.

### 2. Alleged ineffective assistance of appellate counsel

As already mentioned, the Petitioner urged his appellate counsel to raise a number of issues which she, for strategic reasons, declined to brief. Petitioner attached a number of letters from his appellate counsel to the petition for state collateral review. In one letter, Petitioner's counsel properly observed, "[p]lease remember that part of my job is to select among the available issues for the strongest issues. It also does not necessarily help an appeal to raise every possible issue." Petitioner, nevertheless, maintains still that his counsel was ineffective for failing to raise these additional issues.

The KCA analyzed Petitioner's claims of ineffective assistance of appellate counsel by applying *Baker v. State,* 243 Kan. 1, 755 P.2d 493, 498 (1988), which adopted the proper federal standard for this issue— *Strickland v. Washington. See Cargle,* 317 F.3d at 1202 (AEDPA's deferential standard of review is applied where state court applies *Strickland).* As with his ineffective assistance of trial counsel claim, the Petitioner must show constitutionally deficient performance by his appellate counsel along with prejudice. *See id.* Appellate counsel need not present every

nonfrivolous claim, but may select among the claims to maximize the likelihood of success. To analyze an appellate counsel's performance, this Court must weigh the merits of each issue and decide whether the omitted issue was so plainly meritorious that its omission overrides the deferential consideration given to appellate counsel's professional judgment. *Id.*

#### a. Chain of custody

 Testimony at trial established that the undercover agent who had purchased the crack cocaine from Petitioner placed it on a counter top when she was "arrested" and removed along with the defendants. She testified, nevertheless, that she maintained sufficient eye contact with it through a doorway to form a belief that no one disturbed it. She described the appearance and location of the drugs to another officer, who then took the drugs into custody.

The KCA held that the chain of custody, while not perfect, was sufficient for admissibility, and that the deficiencies in the chain were a question for the jury. The federal rule is the same. *See U.S. v. Gorman,* 312 F.3d 1159, 1163 (10th Cir.2002). The Court agrees that the chain of custody issue had little chance of success on appeal, and therefore the KCA not unreasonably concluded that Petitioner's appellate counsel was not ineffective for failing to raise it.

#### b. Motion to suppress

 Petitioner moved to suppress but presented no evidence at the suppression hearing. Based on the testimony of the State's witnesses, the trial court found that Petitioner was not an occupant of the hotel room at the time of the forced entry to effect his arrest. This factual determination is presumed to be correct, and the Petitioner bears the burden to rebut the

presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner makes no such showing.

The trial court, therefore, was not unreasonable in holding held that Petitioner did not have standing to challenge the forced entry. *See United States v. Gordon,* 168 F.3d 1222, 1226–27 (10th Cir. 1999) (citing *Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)). In addition, the crack cocaine he sold to the undercover officer was not seized from him, and the other physical evidence was either seized incident to arrest or upon booking. As such, it was not unreasonable for the KCA to hold that Petitioner's counsel was not ineffective for failing to brief this issue.

c. Lesser included offense

▆▆▆▆ Petitioner maintains that the jury should have been instructed on possession of cocaine with intent to sell because it is a lesser included offense of possession of cocaine with a prior conviction. Although the Petitioner did not articulate this issue before the state court in constitutional terms, "[d]ue process requires a state trial court to give a lesser included offense instruction if the evidence would support a conviction on that offense." *Hooker v. Mullin,* 293 F.3d 1232, 1239 (10th Cir.2002) (citing *Hopper v. Evans,* 456 U.S. 605, 609, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982)). This Court, therefore, will consider the issue on due process grounds. Because the KCA did not apply federal law in reaching its decision, review is *de novo. See Hooks,* 184 F.3d at 1223.

Whether or not possession with intent to sell has a lesser *sentence* than possession with a prior conviction, it is not a lesser *included offense* under either state or federal law. Both Fed.R.Crim.P. 31(c)(1) and the state authority cited by the KCA require the elements of the lesser offense to also be elements of the greater offense.

*See Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *State v. Belcher,* 269 Kan. 2, 4 P.3d 1137, 1139 (2000). Because intent to sell is not an element of possession, the requested instruction was not a lesser included crime. The KCA was not unreasonable, then, in denying Petitioner's claim on this issue.

d. Post-arrest silence

Petitioner testified on his own behalf, and in direct examination he mentioned that he had fallen asleep at the police station after the arrest. When the prosecutor asked in cross-examination why he had fallen asleep, Petitioner blamed the "ordeal" he had just been through. The prosecutor then attempted to impeach Petitioner's credibility by showing that at the first trial he had attributed his fatigue to the work he had done that day.

The cross-examination next turned to events after the arrest, and in the course of the questioning the prosecutor asked, "when you were taken down to the City Building, you didn't tell anybody you were working then, did you?" The Petitioner answered, "I didn't tell anybody anything." The prosecutor began another question but was interrupted by Petitioner's counsel, and at a side bar the trial court sustained an objection to the line of questioning based on the Petitioner's post-arrest right to silence. Petitioner's counsel did not request a curative instruction.

The Petitioner maintained on collateral appeal that this exchange violated his rights to post-arrest silence under *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The KCA did not analyze this issue, however, because Petitioner's counsel failed to cite the record, and the KCA could not locate the alleged improper comments. The KCA did indicate that an isolated references to post-*Mi-*

*randa* silence would be harmless, citing *Brecht v. Abrahamson,* 507 U.S. 619, 638–39, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

As the KCA's opinion indicates, there is a distinction between post-arrest silence and post-*Miranda* silence. Comments upon a defendant's silence after arrest but before *Miranda* warnings were given may be proper. *Brecht,* 507 U.S. at 628–29, 113 S.Ct. 1710. The parties fail to state when Petitioner received *Miranda* warnings, however, and the Court cannot locate this fact in the record. In any event, even if the Petitioner received *Miranda* warning before he was taken to the city building, the prosecutor's question was harmless.

▮ The proper harmless error standard for state courts considering constitutional errors on direct appeal is the *Chapman* standard of harmless beyond a reasonable doubt. *See Saiz,* 296 F.3d at 1012; *Hale v. Gibson,* 227 F.3d 1298, 1324 (10th Cir.2000) (citing *Chapman,* 386 U.S. at 24, 87 S.Ct. 824). If this standard is applied by the state courts, then federal habeas review is under the AEDPA standard-an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d); *Hale,* 227 F.3d at 1324. If the state courts do not properly apply *Chapman,* the pre-AEDPA standard from *Brecht* is applied. *See Hale,* 227 F.3d at 1324.

▮ In this case, because the KCA did not apply *Chapman,* this Court will conduct a *de novo* review under the *Brecht* standard—"a substantial and injurious effect or influence in determining the jury's verdict." *See id.* (quoting *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710). The prosecutor's question did not have a substantial and injurious effect or influence on the jury's verdict. The object of inquiry was quite collateral. The prosecutor was not inquiring about the absence of claims of innocence, or even about statements which tended to prove innocence. Rather, the

question was simply an effort to impeach Petitioner's credibility by showing he had given two different stories to explain his fatigue. Furthermore, it was Petitioner who introduced the fact of his total silence, and the trial court properly halted the line of questioning at that point. The Petitioner's appellate counsel was not ineffective for declining to brief this issue.

e. *Batson* challenge

▮ Only one venire person was black, and she stated during voir dire that her son used illegal drugs and had faced criminal charges in Sedgwick County. When the State exercised a peremptory strike against this venire person, Petitioner's counsel asked the State to provide a race-neutral basis. The State pointed out that the venire person's son had a drug conviction, and the State added that she had not reported a past arrest. The trial court found that the State had provided a race neutral reason for the strike.

On state collateral appeal, Petitioner's counsel did not dispute that the jury selection procedure was unimpeachable under the controlling Supreme Court precedent, *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Instead, Petitioner's counsel alleged that the strike was really for cause, the cause being the venire person's alleged bias in favor of persons of her race. Counsel said the peremptory challenge was just a subterfuge, but counsel provided no citation to the record in support of his suspicions. The Court has conducted an independent review of the record, and it also finds no facts which support counsel's suspicions.

Petitioner also claims in his pro se petition that the State investigated the venire person's criminal background simply because she was black, but once again the Court finds no support for this in the record.

The KCA found that the jury selection comported with *Batson,* and that the trial judge did not err in overruling the *Batson* challenge. The KCA, therefore, held that appellate counsel was not ineffective in raising the issue. Based on federal law, this Court concludes that the KCA was not unreasonable in so holding.

### f. Restrictions on cross-examination

In his pro se petition on state collateral review, Petitioner asserted in a conclusory fashion that the trial court had impermissibly restricted the cross-examination of two prosecution witnesses, the informant and an occupant of the motel room. Petitioner cited the record regarding only the occupant, however, and Petitioner's counsel briefed only these restrictions. The KCA, likewise, concerned itself with only the occupant.

Based on its own review of the record, the Court has located only one substantive restriction on the cross-examination of the informant. When Petitioner's counsel asked about the arrest which set up the informant's taped call to Petitioner, the trial court sustained an objection as beyond the scope of redirect. Petitioner's counsel, however, returned to the theme and was able fully to develop the events surrounding the arrest and the deal the informant struck with the State to avoid charges. In addition, the trial court kept the informant available to the defense for purposes of direct examination. This Court, in other words, can find no factual basis to conclude that the trial court interfered with Petitioner's right to confront the informant.

▮ Regarding the occupant, then, the KCA reviewed the record and held beyond a reasonable doubt that any error in the restriction was harmless and did not change the outcome of the trial. Because the KCA applied the correct harmless error analysis, this Court can grant relief only if the state court unreasonably applied federal law or unreasonably determined the facts. *See Morris v. Burnett,* 319 F.3d 1254, 2003 WL 356637, *13 (10th Cir. Feb.19, 2003); *United States v. Toles,* 297 F.3d 959, 967–68 (10th Cir.2002); *Saiz,* 296 F.3d at 1012.

The occupant was arrested and charged along with Petitioner, but he pleaded guilty. These facts came out on direct examination, and the occupant said there were no special plea negotiations or promises which lead him to testify. He also admitted on direct exams that he had also been convicted of forgery, which he described as passing forged checks to support his drug habit.

On cross-examination, Petitioner's counsel asked the occupant if he was still on probation. The State objected, but the judge overruled the State's objection and personally informed the jury that the witness was still on probation. The State's objections to more detailed questions regarding the occupant's probationary status and forgery conviction were sustained, however.

The Petitioner's counsel later made a proffer outside the jury's presence concerning the occupant's probationary status. Counsel offered no facts indicating that the occupant's probationary status was somehow peculiar or unique, however. Instead, counsel wished to impeach the occupant by examine "how fragile the status" of the occupant's probation was. The trial court rejected this line of inquiry, stating it would not allow such a suggestion in court: "What I assume you're saying is, that he's obliged to lie in this court for the purposes of continuing on probation. I won't allow that to take place." Petitioner's counsel did not dispute this characterization of the proffered impeachment.

Counsel also proffered the occupant's alleged regular practice of forging checks,

and that these forgeries paid for the motel room in which the occupant and Petitioner were arrested.

The Court concludes that the KCA was not unreasonable in holding that the trial court's restrictions were harmless. Among the factors considered in a Confrontation Clause harmless error review are "the importance of the witnesses' testimony in the prosecution's case, the cumulative nature of the testimony, the presence or absence of corroborating or contradictory testimony, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Toles,* 297 F.3d at 968. The occupant was but one of three eye-witnesses to the crime, cross-examination of the occupant put the fact of the occupant's probationary status and his forgery convictions before the jury, and, as already discussed, the prosecution's case was quite strong.

g. Prior sales to other individuals in the motel room

 Petitioner claimed on state collateral review that his appellate counsel was ineffective for failing to contest the admission of testimony of a "Gerry Berry" about Petitioner's cocaine sales to other individuals before the arrival of the undercover officer. The KCA pointed out, however, that Petitioner only cited to the *informant's* testimony regarding her prior contacts with the Petitioner. The KCA also noted that there was no witness named Gerry Berry, and that the occupant of the room who testified was named Gerry Baer.

 The KCA, in other words, did not reach the merits of Petitioner's claim. Al-though it is Petitioner's burden to provide accurate citations to the record, Fed. R.App.Proc. 28(a)(7), this Court has located Baer's testimony, offered without objection, regarding the cocaine sales Petitioner made from the motel room before the arrival of the undercover officer. The Court, as it must, will consider the issue *de novo.*[5]

It is not surprising that Petitioner's counsel failed to object to evidence regarding prior sales. Petitioner's theory, announced in the opening statement, was that Petitioner had come to the motel room for a social visit, and that upon arriving he saw crack cocaine being consumed and people stopping by to purchase drugs. Petitioner's counsel asserted numerous times that Petitioner was uncomfortable with this situation and wanted to leave. Petitioner's counsel contended that Petitioner had not brought drugs to motel room, that he did not sell drugs from the motel room, and that the blame should fall on another black male who came into the motel room after Petitioner.

In other words, Petitioner's motive for being in the motel room and his intent while there were plainly in controversy. As such, testimony establishing that Petitioner was dealing drugs for a time before the undercover officer arrived was relevant and admissible to prove his motive and intent.

Even if admission of testimony regarding prior sales by Petitioner was in error, it was harmless unless it had "a substantial and injurious effect or influence in determining the jury's verdict." *Hale,* 227 F.3d 1298 (10th Cir.2000) (quoting *Brecht,* 507 U.S. at 623, 113 S.Ct. 1710). Having re-

---

5. Regarding the lack of a contemporaneous objection, the State does not raise the procedural bar under *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), and this Court may not raise it sua sponte unless the Court determines that the comity and finality interests served by the *Frady* defense warrant it. *See United States v. Barajas–Diaz,* 313 F.3d 1242, 1245–47 (10th Cir.2002). Under the facts of this case, the Court does not make such a determination.

viewed the record, the Court finds that the prior sales testimony did not have a substantial and injurious effect or influence on the jury. As already stated, the evidence against Petitioner regarding the sale in question was quite strong. And the jury was instructed to consider evidence of other crimes solely to prove intent and absence of mistake or accident. *See Penry v. Johnson,* 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9, 26–27 (2001) (jurors are presumed to follow instructions). Petitioner's appellate counsel was not ineffective for not raising this issue.

h. Sufficiency of the evidence—tax stamp

 Petitioner maintains he was provided with ineffective assistance of appellate counsel because the sufficiency of the evidence regarding the tax stamp charge was not contested on appeal. He admits, however, that the State's evidence showed 1.45 grams of crack cocaine and .93 grams of powdered cocaine on his person. Based on this admission, the KCA had no difficulty in concluding that Petitioner was required to have a drug tax stamp under Kansas law. The Court is bound to this holding regarding state law, *Hawkins,* 291 F.3d at 662–63, and thus the KCA was not unreasonable in finding that Petitioner's appellate counsel was not ineffective in this regard.

i. Aiding and abetting instruction

 Petitioner complains that an aiding and abetting instruction could have resulted in a non-unanimous verdict, thereby depriving him of due process. He argues that some jurors could have found him guilty as a principal, while others voted to convict on an aiding and abetting theory. The jury, however, did not need to agree on the means by which the Petitioner committed the crime. As the KCA pointed out, the jury could have convicted Petitioner either as a principal or as an aider and abetter. *See Schad v. Arizona,*

501 U.S. 624, 631–32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *United States v. Powell,* 226 F.3d 1181, 1196 (10th Cir.2000). Once again, the KCA was not unreasonable in finding Petitioner's appellate counsel was not ineffective.

j. Sufficiency of the evidence-identity

 Petitioner argues that his appellate counsel should have contested the sufficiency of his identification at trial. He claims that the witnesses confused him with another black man who left shortly before the forced entry. The State asks the Court to apply the procedural bar doctrine because Petitioner did not raise this issue on direct appeal, but the KCA considered the merits on collateral appeal. The claim, in other words, was not defaulted in state court. *See Hamm,* 300 F.3d at 1216 (quoting *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546); *Hume,* 176 F.Supp.2d at 1140 (procedural bar doctrine applies to claims defaulted in state court).

The KCA applied the correct federal standard for sufficiency of the evidence. That standard requires the reviewing court to consider the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *See Torres,* 317 F.3d at 1151 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Although the KCA did not cite *Jackson,* Kansas has adopted the *Jackson* standard. *See State v. Peltier,* 249 Kan. 415, 819 P.2d 628, 630 (1991) (citing *Jackson* ). This Court, therefore, construes the KCA's determination on the sufficiency of the evidence to be an application of *Jackson. See Torres,* 317 F.3d at 1152.

While it is clear that the deferential standard under AEDPA should be applied, there is a split in the Tenth Circuit over whether review of sufficiency is a legal

determination under 28 U.S.C. § 2254(d)(1) or a factual finding under 28 U.S.C. § 2254(d)(2) and (e)(1). *MacPhale v. Tobias,* 2003 WL 356782, *1 (10th Cir. Feb. 19, 2003). Under either approach, Petitioner's claim fails.

■ As a legal determination, the KCA was not unreasonable in holding that the eye-witness identification by the undercover officer was sufficient. Petitioner points to conflicts in the evidence regarding what the seller of the cocaine was wearing, but it is the responsibility of the jury to resolve conflicts in the testimony and to weigh the evidence. *See Torres,* 317 F.3d at 1151. The Petitioner's appellate counsel was not unreasonable for declining to brief this claim.

As a factual finding, the state court's finding is presumed to be correct, and the conflicting evidence noted by Petitioner is not clear and convincing evidence to the contrary. It was not unreasonable to conclude that the undercover officer purchased the drugs from the Petitioner, as opposed to the other black man as Petitioner insists. Testimony indicated that the other black man had left the room before the purchase, and the general physical descriptions of the two were very different. The KCA did not err in concluding that Petitioner's appellate counsel was not ineffective in this respect.

## C. CUMULATIVE ERROR

■ Cumulative error analysis considers all errors found to be harmless and determines whether they are harmless in their cumulative effect. *See Cargle,* 317 F.3d at 1206. Claims which require consideration of prejudice, such as ineffective assistance of counsel claims under *Strickland,* should also be included where they have been denied for lack of prejudice. If a state court analysis of cumulative error does not consider all errors found by the federal habeas review, the AEDPA's restriction on habeas review do not apply.

*See id.* The proper test in that instance is from *Brecht*—a substantial and injurious influence or effect on the jury's verdict. *See id* at 1220.

The KCA denied some ineffective assistance of appellate counsel claims for lack of prejudice on collateral appeal, but it did not then reconsider the cumulative error issue in this light. There were, in addition, issues left unexamined because of the lack of proper citations to the record. For these reasons, the Court will consider the issue *de novo.*

■ The United States Constitution guaranteed Petitioner a fair trial, not a perfect trial. *See Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). This is what Petitioner received. Based on its examination of the record, the Court is satisfied that the errors, if any, committed by his attorneys or the trial court did not in their cumulative effect deprive Petitioner of his constitutional rights. The evidence against him was strong, his trial counsel aggressively pursued any inconsistencies in the State's case, and his appellate counsel did not omit any plainly meritorious issues. The Court concludes that the cumulative effect of any trial errors did not have either a substantial or an injurious influence or effect on the jury's verdict.

IT IS THEREFORE ORDERED that Defendant's petition for relief under the provisions of 28 U.S.C. Section 2254 (Doc. 1) be and hereby is DENIED, and

IT IS FURTHER ORDERED that a Certificate of Appealability under the provisions of 28 U.S.C. Section 2253 be and hereby is DENIED.

SO ORDERED this 6th day of March, 2003,